MISSOURI PACIFIC RAILWAY COMPANY v. HENRY PORTER AND WIFE.

No. 3709.

1. **Presumptions—Negligence.**—In a suit by parents against a railway company for negligently causing the death of their son, whose dead body was found upon the track in a mangled condition, with blood upon the rails; *held,* that it is fair to presume that the train of the railway caused the death, but that it devolved upon the plaintiffs to show that the accident resulted from the negligence of the employes of the railway and that their son's negligence did not contribute to the injury.

2. **Negligence—Circumstantial Evidence.**—In absence of eye witnesses negligence on part of a railway company and due care on part of the injured party may be proved by circumstances. But these circumstances must themselves be shown by direct testimony and they can not be inferred from other circumstances. The law does not admit one presumption to be based upon another.

3. **Same—Fact Case.**—See testimony held insufficient to show either negligence on part of the railway or proper care on the part of the injured party.

APPEAL from Montgomery. Tried below before Hon. Jas. Masterson. The facts appear in the opinion.

*Baker, Botts & Baker,* for appellant.—There was neither evidence of negligence on part of the appellant nor of proper care on part of the deceased. H. & T. C. Ry. Co. v. Schmidt, 61 Texas, 282; T. & P. Ry. Co. v. Hoover, 61 Texas, 503; T. & P. Ry. Co. v. Casey, 52 Texas, 122; G. H. & S. A. Ry. Co. v. Bracken, 59 Texas, 74; H. & T. C. Ry. Co. v. Richards, 59 Texas, 377; Miller v. R. R. Co., 10 Am. and Eng. R. R. Cases, 723; Railroad Co. v. Hummell, 8 Wright (Pa.), 375; Hallihan v. Railroad Co., 71 Md., 113; Toledo R. R. Co. v. Branagan, 5 Am. and Eng. R. R. Cases, 630 and note; Chase v. Railroad Co., 19 Id., 356; Railroad Co. v. Stebbing, Id., 36; Railroad Co. v. Ritchie, Id., 267.

GAINES, ASSOCIATE JUSTICE.—Henry Porter and wife brought this action against appellant to recover damages for injuries resulting in the death of their minor son, Ernest Porter.

It was alleged in the petition that the son was run over and killed by the cars of the appellant at and about a point near Haltom's switch, where the track of the railroad was crossed by a public highway, and that his death was caused by the failure of appellant's servants to ring the bell or blow the whistle of the engine which propelled the train. Henry Porter himself testified that he had sent his son to a mill at a station five miles north of Haltom's switch, where he lived; that he expected his return at sunset, but that not having returned at that time he set out about dark to find him; that he went out along the railroad track between the rails, and about a quarter of a mile north of Haltom met him on the track going toward home with a sack of meal on his head. The son informed him that the horse he had ridden had given out and that he left him at a station between the point of meeting and the mill. He directed his son to go on home and he went for the horse. The last he saw of his son he " was walking between the rails with the sack of meal on his head going home. A train passed there about one and a half hours after he met Ernest on the railroad track." Not finding his son upon his return home he supposed he had gone to sleep in the corn crib, but not discovering him there concluded he had stopped at the house of a neighbor. He lived on the east side of the railroad at Haltom's switch. Just north of the switch a road crossed the track to the west side and then ran north parallel to and near the railroad. Next morning the mangled remains of the son were found on the track of the railroad 150 or 200 yards north of the crossing.

Several witnesses testified to this fact, and also that they saw blood on the track at a distance variously estimated by them from fifteen to forty yards north of the crossing. The train which passed about the time was a heavily loaded gravel train with a headlight, and made a noise that was distinctly heard a mile or more. The road from above the crossing for more than a mile below it was level and straight so that a headlight of a train going north could have been seen at a great distance by one walking on the track going in the opposite direction. There were whistling posts near the switch and there was evidence showing that the bell was usually rung or the whistle blown as the trains passed it, and that no bell was rung or whistle blown on this occasion. The switch was not a regular stopping place.

Ernest was a bright boy, nine years old; had been reared at Haltom, and knew and realized the danger of railroad trains. When the father returned after going for his horse and discovered his son had not returned he looked for the sack of meal and did not find it. The evidence does not disclose whether it was ever seen again by any witness or not. In

addition to this testimony one Dave Harris testified for plaintiff that he lived about a quarter of a mile north of Haltom on the east side of the railroad; that he saw Henry Porter after dark going along the dirt road about twenty-five yards west of the railroad track, and saw him meet Ernest on the dirt road and heard the conversation between them, and that he saw Ernest go on toward home on the dirt road. When he saw Henry Porter and his son meet he was about one hundred yards away. There was wood piled on the west side of the railroad at the crossing and on both sides of the dirt road, which would have shut off the view of a train coming from the south from a boy while near the track, but not from the dirt road before the wood was reached.

An engineer of the defendant testified that he was operating the engine of a gravel train on the night of the accident, which passed Haltom going north he thought a little after midnight; that he kept a careful lookout and ran over no one. He said there was another shell train running on the same division of the road. But there was no evidence that any other train passed Haltom on the night in question.

The dead body of their son having been found upon the railroad track, mangled as if by a passing train, it is fair to presume that a train of the defendant was the cause of his death. Still it was incumbent upon plaintiffs to show that the accident resulted from the negligence of the defendant's servants and that their son's negligence did not contribute to the injury.

By the testimony adduced by plaintiffs two theories are suggested, one by the testimony of the father, the other by that of the witness Harris. According to the father, when his son was last seen alive he was walking down the railroad between the rails toward the point at which he was killed. He was then a quarter of a mile from the place at which he met his death. If he had kept moving he would have probably reached home in less than a quarter of an hour after his father left him. The father testified that it was an hour or an hour and a half after they parted before the train went north. How then did this accident occur? If, as the father's evidence shows, he was going meeting a train with a bright head light which could be seen for a mile or more, making a noise that was heard by several witnesses at a great distance, how is it possible that he could have been injured while in the exercise of any degree of care on his part? If Harris is to be believed and the son was traveling upon the dirt road, then we must presume in order to entitle plaintiffs to recover that he approached the crossing just at the time the view of the train was cut off by the pile of wood, and that he attempted to cross, being unconscious of its approach. But can we say from the testimony that he was killed as he was attempting to cross? Could the father, who testified that he was walking on the track and met his son on the railroad, and that when he last saw him he was walking toward home

"between the rails," have been mistaken as to the last place at which he ever saw his son alive? There was no sign of the collision immediately at the crossing.

It is possible that the deceased may have been struck by the engine at the crossing and carried some distance before any blood was left upon the track. But that he was upon the crossing we have no evidence. The only possible way to construct a theory of the case which would entitle plaintiffs to recover is to deduce one presumption from another, and this the law will not permit. Lawson on Pres. Ev., Rule 118, p. 569. Where there is no eye witness proof of negligence on part of a railroad company and of care on part of a person killed at a crossing, the facts may be established by circumstances (Railroad Co. v. Hall, 61 Pa. St., 361), but the circumstances themselves must be shown by direct evidence and can not be inferred from other circumstances. It is not admissible to go into the domain of conjecture and to pile one presumption upon another. Railroad Co. v. Henrice, 92 Pa. St., 431; U. S. v. Ross, 92 U. S., 284; Douglass v. Mitchell, 35 Pa. St., 440.

There is evidence tending to show negligence in the railroad company in failing to give a signal upon approaching a crossing where it had been accustomed to ring the bell or blow the whistle. But whether this contributed to the death of Ernest Porter or not, and whether he exercised due care or not, the evidence leaves us wholly in doubt. The case developed by the record leaves the circumstances of his death enveloped in mystery. The testimony fails to show negligence on part of the defendant contributory to the injury. It tends to show negligence on part of the deceased in walking upon the track, and there is nothing but very remote circumstances to rebut this presumption. It appearing that the train did not pass until long after he had time to have reached home, it would seem that the most plausible theory is that being overcome with fatigue he sat down upon the track to rest and unintentionally fell asleep and was in that condition run over and killed. No one saw the accident; the evidence tends to show that the deceased was negligent in walking along the track, and the circumstances directly proved neither show that the negligence of the company caused the injury or that the deceased's negligence did not contribute to it, and therefore the verdict must be set aside.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 12, 1889.