SOUTHWESTERN COAL AND IMPROVEMENT COMPANY v. JOHN ROHR.

Decided February 10, 1897.

1. Contributory Negligence.—Charge.

See evidence under which a charge upon contributory negligence in standing in a place of danger was properly qualified so as to excuse the plaintiff from such imputation if there was no other place where he could safely stand.

2. Negligence—Evidence—Question for Jury.

See evidence, in case of injury to employe in a coal mine, struck by a car coming down the main slope and deflected into gallery where he was standing, held sufficient to justify submitting the question whether such deflection was caused by defect in the car, and supporting a recovery for negligence based on that theory.

3. Same—Presumption.

In such case see evidence on which a recovery by plaintiff was held not to involve the basing of a presumption upon a presumption.

4. Leading Questions—Impeaching One's Own Witness—Surprise.

Where counsel calling a witness are surprised by his testimony, which differs from that given at a former trial, they may be permitted to ask him leading questions and to impeach by questioning him as to his former evidence.

APPEAL from the District Court of Grayson County. Tried below before Hon. DON A. BLISS.

*R. C. Foster* and *A. E. Wilkinson*, for appellant.—The court erred in giving to the jury the 6th paragraph or instruction of his charge in that there was no evidence that plaintiff's injury was caused by defects in defendant's cars and by a submission of said question to the jury they were permitted to find for the plaintiff on mere conjecture and without evidence. Railway v. Porter, 73 Texas, 304; Railway v. Nicholson, 22 S. W. Rep., 770; Pas. Co. v. Henrice, 92 Pa. St., 431; U. S. v. Ross, 92 U. S., 284; Lawson, Presumptive Evidence, rule 118, p. 569; Black, Plead. and Proof in Actions for Negligence, 11, 12.

The verdict of the jury was against and contrary to the weight of and unsupported by the evidence in this that the evidence showed that plaintiff's injury was solely due to his failure to properly set the switches and to his failure to occupy a safe position when one existed and that his injury was caused by his own contributory negligence.

The court erred in permitting plaintiff to cross-examine their own witness, Walter Kerr, and ask him leading questions and question him about statements made by him and introduce proof of his previous statements after having themselves called him to the stand. Paxton v. Boyce, 1 Texas, 325; Scott v. State, 20 S. W. Rep., 549; 29 Am. and Eng. Ency., Law, 812, note 1, 813, note 2; 60 Am. Dec., 751—Note to Burkhalter v. Edwards; 2 Best, Ev., sec. 645.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.—Where the employe knows the general bad condition of the implements or premises about which he is called to work he is precluded from a recovery even though he has not knowledge of the particular defect. Railway v. Somers, 78 Texas, 443; Green v. Cross, 79 Texas, 132.

*Wolfe & Hare,* for appellee.—The charge of the court properly permitted the jury to consider whether or not the car was defective and whether such defect caused plaintiff's injury. Railway v. Robertson, 82 Texas, 662; McCrary v. Railway, 34 S. W. Rep., 95.

There being evidence to support the verdict and judgment for appellee, the same will not be disturbed by this court unless the same is clearly against the great weight and preponderance of the testimony. Supreme Council v. Anderson, 61 Texas, 301; Brown v. Griffin, 71 Texas, 659; Railway v. Overheiser, 76 Texas, 437.

Appellee being surprised by the testimony of the witness, together with the further fact that said witness showed himself to be an unwilling one, warranted the court in permitting said witness to be cross-examined by appellee. Letcher v. Morrison, 79 Texas, 240; P. P. Car Co. v. Smith, 79 Texas, 468; Wallace v. Schneider, 79 Texas, 479; Railway v. Bland, 34 S. W. Rep., 768; Wallis v. Leonard, 34 S. W. Rep., 799; Bank v. Emery, 78 Texas, 515; Clayton's Admr. v. Frazier, 33 Texas, 100; 1 Greenl., Ev., sec. 444; Phil., Ev., 481 to 485; Am. and Eng. Ency., Law, 812.

COLLARD, ASSOCIATE JUSTICE.—This is an appeal from the District Court of Grayson County from a judgment for $8000 against appellant in favor of appellee.

Defendant below (appellant) was the proprietor of a coal mine at Coalgate, in the Indian Territory, and plaintiff was an employe of the company in the mine as a flagman or switchman, and was injured by cars running on him in a side gallery. There was a vertical shaft from the surface of the ground, sixty feet deep, to the vein of coal, and there were galleries running out laterally from near the foot of the shaft and

along the main slope, which were provided with tracks upon which cars were run to receive and convey away the coal taken from the mine. From the bottom of the shaft there was a straight slope running on an incline of about one foot in twelve following the dip of the vein of coal. There were four side galleries on each side of the shaft, running out north and south, numbered from the bottom of the shaft and designated as first north lift, second north lift, and so on, and first south lift, second south lift, etc. From the foot of the shaft the cars were sent on down the straight slope on the incline, and there were latches provided opposite the entrance of each lift to turn them into the lift, there being two tracks for the cars in each lift—one for empty cars and the other for loaded cars. The cars were hauled out of the shaft by an elevator, and were let down in the same manner.

At the time in question plaintiff {was employed as switchman at the third north lift and the third south lift. The switch on the main slope had been set by him to turn the cars coming down into the third north lift. Cars were coming down the main slope, and he received a signal to allow them to pass his lift and run on the main slope to the fourth north lift. To comply with this signal he had to set the latches or switch so that the cars would pass him at the third north lift, where he was stationed. At the time the signal was given he was at the third south lift. He says he ran across, changed the latches so as to allow the cars—four in number, called a "trip"—to pass to the fourth north lift, and, as he should have done, he went into the north lift to be out of danger, the place for him to go for that purpose, as all others did. He stopped on the track used for empties about twenty-five to forty feet from the entrance to the lift. The cars, instead of running on down the main slope, or straight, left it and went out on the track leading into the lift where he was. They came on to him suddenly, striking him above the ankles, breaking them.

The testimony shows that plaintiff went into the lift, as he ought to have done, taking his position at the end of some empty cars on the track used for empty cars. The other track in the lift was occupied with loaded cars. Parties found him after his injury leaning against some loaded cars between the loaded and the empty tracks.

There were man holes along the main slope—recesses for an employe to go into when cars were passing along the same—but the testimony does not show that there were any manholes in the lift where plaintiff was at the time he was hurt, and there was not room for a man to stand in safety between the tracks while cars were passing in the lift. There were no manholes in the main slope near the lift.

The testimony tends to show that because of a small wheel on the front car—one inch smaller in diameter than the other three wheels—it jumped the main track and went on to the side track, and after the accident was found off the track in the lift. Several cars were off the track. The evidence, however, is contradictory on both these facts, there being testimony from which it might be inferred that plaintiff

failed to set the switch or latches to run on the track down the main slope. There was positive testimony that when the cars stopped in the lift the wheels were in position on the track. There was also positive testimony that they were off the track when the cars stopped, and the testimony was positive that plaintiff set the latches to run the cars on down the main slope. In deference to the verdict we find these disputed questions of fact in favor of plaintiff.

The petition alleged that the injury was the result of a defective track and defective cars. There was no testimony as to defective track, unless it was in the switching apparatus—movable latches on each side of the track; but the tendency of the testimony was that if the switch was set as plaintiff testified—to send the cars on the main slope—they jumped the track at the switch and went on into the lift because of the small wheel on the front car, it being one of the front wheels.

It is conceded that if plaintiff was entitled to recover the injuries received would support a verdict for $8000.

*Opinion.*—1.  The charge of the court was as favorable to defendant as it ought to have been.

In the ninth paragraph of the general charge the court instructed the jury as to contributory negligence of the plaintiff in case they should find that he was injured while standing on the track, when a person of ordinary care would not have done so, in which event he could not recover; and this instruction was qualified as follows: "But, in this connection, you are instructed that if you believe from the evidence that the situation in said North entry where plaintiff was standing was such that plaintiff had no place where he could safely stand except on said track in front of said car, the mere fact that he did so would not bar a recovery by him if he were without fault in all other respects."

It is assigned that this qualification of the charge is erroneous, because there is no evidence tending to show that he might not have stood in a place of safety not on the track.

We cannot say that the qualification referred to was erroneous for the reason assigned. It was not without testimony to support it, and it was not improper to submit the issue to the jury. The question was one for the jury to decide. It is shown that plaintiff went into the lift, as was usual and proper; that he had set the latches to send the cars on down the straight track, and went into the lift, where he should have gone, to get out of the way into a place of safety; that the cars followed him and he was struck suddenly and unexpectedly; that he could not stand between the tracks while cars were passing.

Appellant contends that he might have gone into the manholes, but there is no testimony that there were manholes in the lift.

It is also contended that he might have taken his position at the entrance of the lift at the end of the loaded cars; but the evidence does not tend to show that he could have done this after he had gone into the lift and after he saw the cars approaching in time to have escaped

injury. There was no room to pass between the moving cars and the still cars.

We are doubtful that any of this (the ninth) paragraph of the charge should have been given; but, having given the first part of it, there was testimony justifying the qualification of it.

There were still cars on the track where plaintiff was injured, and to extricate himself after he was caught between them he, while sitting on the front part of them, pushed them backward, making room for him to get his legs out.

3. We cannot agree with appellant that there was error in the court's charge submitting to the jury the issue whether or not plaintiff's injuries were the result of the defect in the wheel of the car, causing it to jump the track. It is true, the testimony was only circumstantial showing that the defect in the wheel caused the injury; but we cannot say that the inference might not have been a reasonable one that the injury was so caused. Nor can it be said that the court erred in submitting the issue. The court submitted other issues in favor of the defendant as fully as could have been demanded, and he should have submitted the one in question.

The fact to be proved did not, in our opinion, depend upon two presumptions, as it did in the case of Railway v. Porter, 73 Texas, 304. In that case there could be only an inference that plaintiff's son was killed by the cars of the company at a crossing from the fact that blood was found there, some distance from where his dead body was found, near the road; but the second inference could not arise from this fact only,—that the company's servants were negligent and ought to have seen him in time to have avoided the killing of him. The mere fact that he was killed by the cars could be presumed; but that would not of itself justify the presumption of the company's negligence so as to make it liable.

The question before us is not the same as in that case, nor do the authorities cited authorize us to say that the verdict in this case is based upon a presumption upon a presumption. Here the negligence is proved —using a car with wheels of different sizes—and the only presumption or inference to establish liability of defendant is that such defect in the car caused the injury, and we think the testimony warrants this conclusion.

We believe the issue should have been submitted to the jury, and that the testimony warrants the verdict.

3. There was no error in permitting plaintiff's counsel to lead his witness Kerr, nor to cross-examine him as to his testimony on the former trial of the case, and then, being surprised at his answers, to prove that he had testified differently on the former trial. His testimony on the former trial was favorable to plaintiff, and as to the same matter on the last trial on material questions of fact his testimony was unfavorable. He was an unwilling witness, and it became necessary to ask him leading questions to get proper answers. His testimony was evidently a surprise to plaintiff, the witness having testified differently

before. In cases of surprise, where a party has been misled, it is permissible for him to impeach his own witness by showing former statements contradictory to his present testimony. 1 Greenl. on Ev., sec. 444; 1 Wharton on Ev., sec. 549.

4. We are not in a position to say that the verdict is contrary to the facts proved or that plaintiff was injured by reason of his own negligence in failing to set the latches to send the cars on down the straight slope. It was the province of the jury to decide what the cause was, there being more than one theory concerning it, and, the trial judge having approved the verdict, we should not disturb it. Brown v. Griffin, 71 Texas, 659; Railway v. Overheiser, 76 Texas, 437.

Believing that the verdict is sustained by the testimony and that there was no error in the trial of the case, the judgment of the lower court is affirmed.

*Affirmed.*

Writ of error refused.