Fort Worth Belt Railway Company v. Helen Jones et al.

No. 2352.    Decided May 20, 1914.

Evidence—Presumption—Negligence.

Where defendant, a railway company sued for injury by negligence in permitting an iron pipe to be upon the track on which its employees were operating cars, impleaded and sought judgment against a packing company doing construction work adjoining such track as being the one whose servants had negligently placed the pipe thereon, the burden was on it to prove that they had done so. It could not be presumed from the fact that servants of the packing company were making excavations there and from its failure to prove by them that no such pipe had been taken by them from the ground. Evidence considered is held to support a peremptory instruction to find for the packing company. (Pp. 349, 350.)

Question certified from the Court of Civil Appeals, Second District, in an appeal from Tarrant County.

*H. M. Chapman* and *Lassiter, Harrison & Rowland,* for appellant.— The court erred in directing the jury to find a verdict in favor of Armour & Co., as the facts warranted a submission of the issue to the jury of that company's liability. Moore v. Savage & Kopplin, 135 S. W., 1033; Austin Co. v. Faust, 133 S. W., 449, and authorities cited; McCray v. Railway Co., 89 Texas, 168; Wininger v. Railway Co., 105 Texas, 56; 6 Thompson on Negligence, sec. 7394; Bailey v. Hicks, 16 Texas, 222; Needham v. State, 19 Texas, 332; Kirby v. Talmadge, 160 U. S., 379.

*Capps, Cantey, Hanger & Short* and *David B. Trammell,* for appellee Armour & Co.—The Court of Civil Appeals having held that under the evidence in this case plaintiffs were not entitled to judgment against the Fort Worth Belt Railway Company, the judgment in favor of Armour & Co. should have been affirmed. Hamilton v. Prescott, 73 Texas, 565.

The evidence in this case is wholly insufficient to make out a case in favor of the Fort Worth Belt Railway Company against Armour & Co., and the majority of the Court of Civil Appeals for the Second District were in error in so holding. Missouri, K. & T. Ry. Co. of Texas v. Jones, 103 Texas, 187; Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451; Galveston, H. & S. A. Ry. Co. v. Faber, 77 Texas, 153; St. L., S. F. & T. Ry. Co. v. Cason, 129 S. W., 394, and authorities cited and discussed; Wolf v. American Tract Society, 164 N. Y., 30; Halsch v. Cornell Co., 97 N. Y. Supp., 983.

The absence of evidence showing the presence of any persons at the place of the accident immediately prior thereto other than the employees

of appellee Armour & Co. can not serve to make out a case for appellant, Fort Worth Belt Railway Company. Missouri, K. & T. Ry. Co. of Texas v. Jones, 103 Texas, 187.

If the testimony of appellee Armour & Co.'s servants would have made out a case for the Fort Worth Belt Railway Company, when it could produce no other, it should have called them. Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 451; Sauer v. Union Oil Co., 43 La. Ann., 699; Kerstner v. Vorweg (Mo.), 32 S. W., 299; Scovill v. Baldwin, 27 Conn., 316.

The presumption or inference that the pipe in question got upon appellant's tracks through the negligence of some one of appellee Armour & Co.'s servants can not support the further inference that such servant was acting within the scope of his authority, since an inference can not be founded upon an inference, nor one presumption piled upon another presumption. (a) One presumption may not be deduced from another. Missouri Pac. Ry. Co. v. Porter, 73 Texas, 304. (b) The master is only liable for the act of his servant when done within the scope of the servant's employment. International & G. N. Ry. Co. v. Cooper, 88 Texas, 607; International & G. N. Ry. Co. v. Anderson, 82 Texas, 516, and authorities cited below. (c) The burden is upon plaintiff to show that defendant's servant was acting within the scope of his authority. International & G. N. Ry. Co. v. Anderson, 82 Texas, 516; Texas & P. Ry. Co. v. Black, 87 Texas, 161; Galveston, H. & S. A. Ry. Co. v. Henefy, 99 S. W., 884; Texas & P. Ry. Co. v. Moody, 23 S. W., 41; Little v. Crescent News & Hotel Co., 27 Texas Civ. App., 530. (d) The fact that the servant at the time was using an instrumentality of the master does not alter the rule. Slater v. Advance Thresher Co., 5 L. R. A. (N. S.), 598.

Since this is a death case, Armour & Co. would only be liable for its personal or corporate negligence, or that of a vice principal. Farmers & Mechanics Natl. Bank v. Hanks, 104 Texas, 320; Sullivan Sanford Lumber Co. v. Cooper, 105 Texas, 21; Commerce Cotton Oil Co. v. Camp, 105 Texas, 130.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The Court of Civil Appeals has failed to find and certify the facts as required by article 1619, Revised Statutes, 1911, but refers this court to the opinions for the facts involved. Having received submission of the question we will endeavor to state the facts. The question submitted is stated thus:

"Whether or not under the circumstances stated in said opinions and otherwise shown by the record, the trial court erred, as assigned by appellant, in peremptorily instructing a verdict in favor of appellee, Armour & Co.?"

The facts are so stated that we must copy the following in order to be sure of setting out all that is material. We copy from the opinion as follows:

"Frank Jones was employed by the Fort Worth Belt Railway Com-

pany as a switchman. On March 2, 1910, while serving in that capacity he and Swope, another switchman, were stationed on the rear car of one of that company's trains. This train was backed in upon a switch track leading to Swift & Co.'s plant, thus placing the car upon which the switchmen were riding in front. While the train was thus moving Jones and Swope discovered an iron pipe lying across the track ahead of them, and one or both gave to the engineer a signal to stop the train. In obedience to this signal the train was stopped, or its speed checked, so suddenly that Jones fell upon the track in front of the car and was run over and killed. Helen Jones, his widow, for herself and minor children instituted this suit against the Fort Worth Belt Railway Company to recover damages as a result of the death of her husband, and from a judgment in favor of plaintiff the railway company has appealed." Omitting that which relates alone to the railroad company, we copy from the opinion as follows:

"The Fort Worth Belt Railway Company interpleaded Armour & Co., alleging that the latter company placed the iron pipe in question upon the track and that in so doing it was guilty of negligence; that the railway company was ignorant of the fact that the pipe was upon the track; that the negligence of Armour & Co. in placing the pipe upon the track was the direct and proximate cause of the accident; and by reason of such facts they prayed for judgment over against Armour & Co. in the event the railway company should be held liable to the plaintiffs for the death of Frank Jones. In obedience to a peremptory instruction by the court the jury returned a verdict in favor of Armour & Co. upon this plea over against it and that instruction is assigned as error by appellant.

"H. D. Stephenson testified that he was employed by Armour & Co. as one of the millwright gang and at the time of the accident was engaged with other employees in putting in concrete forms for the erection of the reservoir in the holes previously made by the excavations mentioned above; that he witnessed the accident and saw the pipe upon the railway track at that time. He further testified as follows: 'I was working with a foreman named Swodener. Kichter was running the bull gang. His gang had dug those holes for these concrete forms and some of the same gang were putting in the concrete. . . . There was no work being done there that I remember of in which any iron pipe such as I saw there was being used. I did not see any such pipe that was in use there—we were not using it. These other men and myself were working for Armour & Co. This cement business was part of a reservoir that Armour & Co. was putting in on their property.'

"W. S. Woodward, superintendent of transportation for the appellant, reached the place of the accident shortly after the accident and inspected the iron pipe in question. He testified as follows: 'Now the reservoir is on the right hand side as you are shoving into Swift's plant and these condensers as I call them are about six feet from the track, but I have no idea of the depth of them, may be six feet or ten feet or twelve or might be deeper. I should think they are probably sixteen

by twenty feet in size. I do not know how long this work of excavation had been going on at that particular place. Armour & Co. were doing that excavation and the railroad had nothing to do with it. I should think, as near as I can remember, this work had been going on there generally, along that place where this pipe was picked up, about two weeks. . . . This pipe is a deal more rusty now than it was at that time, it was rusty at that time but not so rusty as it is now. In my judgment that pipe had been in use—it was an old pipe. . . . I will say that there was an embankment of dirt next to the rail on the west side, and the other side where this excavation was the dirt was piled on them . . . the track was level about twenty or thirty feet, or a little higher than the rail with the dirt, but it was south of where this excavating was, I should think about twenty or thirty feet as near as I can remember. . . . It was between twenty and thirty minutes after the accident before I got to the scene of it. The remains of the deceased were still there when I got there, they had not been removed. This pipe I testified about this morning was still there. At that time the pipe was not as rusty as it is now, it was rusty, but not as much as it is now. This is the same pipe that was there at that time. It did have the appearance of having been buried in the ground. There was no difference in the appearance of the pipe in the rust as to having been buried from one end to the other. The condition of the ground immediately west of the track, say from a point opposite the second pier from the south or down to where we found this pipe was that there was loose dirt piled right in here (indicating on the map heretofore referred to in this record), by "here" I mean between the pier and the railroad. I don't remember about that being the south pier—I don't remember nothing about those piers. I should think that dirt was piled up two feet higher than the rail, about that. At the point where it was two feet higher than the rail, I should think that was probably three feet from the rail, or about that, and it sloped down. That dirt did not interfere with the movement of the train, it was not over the rails. I suppose that dirt came out of the excavations that were dug for those piers or foundations rather. I don't know how long it had been after these foundations had been dug and completed before the crew went to put in those boxes to hold the concrete. . . . When I got there the pipe had been picked up by someone and was lying up on a pile of dirt. It had been removed and all I know about that being the pipe, you understand, is what I was told there. I do not know that that is the pipe they hit. When I got there it was generally understood that that was the pipe and it was the one that was pointed out to me and this is that pipe. There was no other pipe around there.'

"Referring to the railway track where the accident happened, the witness Woodward further testified: 'This track at this place was not No. 9, it was Swift's lead. It ran to Swift & Co.'s plant and the Southwestern Mechanical Company's plant. In hauling stuff to Armour & Co. it would not come in over that track at all. In hauling out things from Swift & Co.'s plant and also from the Southwestern Mechanical

Company's plant it would come out over this tract that we call Swift's "lead." You ask me if it is not a frequent occurrence in both Swift & Co.'s plant and in the Southwestern Mechanical Company's plant that old iron is junked, and I answer you by stating that we call it scrapped, it is sold to the junk dealers here. It is hauled out there over this track out to the place where it is kept until they come and get it, coming from the Mechanical Company's plant or from Swift & Co.'s you do come over that track. It is true that such pipe as this—that is true of such pipe as this frequently.'

"Ben Roy, a steam fitter in the employment of Armour & Co. at the time of the accident, was talking to the foreman of the millwright gang as the train approached and witnessed the accident. He testified: 'There was dirt piled up there on the west side of the track from a point where this gentleman and I were standing when we saw this pipe on the track, between us and them. It was piled higher than the track. It was sloping down, the dirt sloped down; sloped down probably within eight inches of the track. That dirt came out of those holes along there by the reservoir that they put this concrete in for the condenser. That was not on the rail. The only thing I seen on the rail was this pipe. . . . I was then in the employ of Armour & Co. I had business at the reservoir or I would not have been there. I had worked from that point to the top of the engine room. There was no work being done there in which this pipe was being used, that I know of, or such pipe as I saw there at that time. I was a steam fitter engaged in working around that place at that time. If there was any work being done there in which such pipe as this was being used I do not know anything about it. I do not know of anyone besides myself that was using it there or why they would have it there. That piece of pipe which was shown me is not the pipe in my judgment; the piece of pipe I seen was a newer piece of pipe than that, but it was an old pipe, but not so rusty as that.'

"Upon the issue whether or not the iron pipe was placed upon the track by Armour & Co.'s employees, the foregoing is substantially the entire testimony introduced.

"The majority of this court are of the opinion that the testimony recited above considered in connection with the failure of Armour & Co. to prove that no such pipe had been taken from the ground during the excavations and the absence of any evidence showing the presence of any persons at the place of the accident immediately prior thereto other than the employees of Armour & Co. tended to support the affirmative of that issue and that the court erred in peremptorily instructing a verdict in favor of Armour & Co.

"The writer, however, is unable to concur in this conclusion."

The fact that Armour & Co.'s servants were at work near the track can not furnish a basis for a presumption that they placed the pipe on the track. It did not rest upon Armour & Co. to prove that their

servants did not place the pipe there, but the burden was upon the railroad company.

A presumption of fact can not rest upon a fact presumed. The fact relied upon to support the presumption must be proved. "No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence as if they were the facts in issue; one presumption can not be based upon another presumption." 16 Cyc., 1051; Missouri Pac. Ry. Co. v. Porter, 73 Texas, 307, 11 S. W., 324. No fact or circumstance was proved in this case which justifies the presumption that the pipe was placed upon the track of the railroad by any person under the control of Armour & Co.

The trial court did not err in giving peremptory instructions to the jury to return a verdict for Armour & Co.