BLACKMAN v. SAN ANTONIO & A. P.
RY. CO. (No. 5923.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 2, 1918. On Motion for Rehearing, Jan. 30, 1918.)

1. MASTER AND SERVANT ☞281(2)—INJURIES TO SERVANT—EVIDENCE.

In a railroad employé's action for personal injuries, due to a defective guard rail used for the purpose of holding open a vestibule door in a Pullman coach, the jury could not find that the plaintiff himself had adjusted such guard rail from evidence that no one else had done so, since such finding would be a presumption based upon the presumption that the door had been closed prior to the injury.

2. MASTER AND SERVANT ☞264(4)—INJURIES TO SERVANT—ISSUES, PROOF, AND VARIANCE.

In a railroad employé's action for injuries, due to a defective guard rail used to hold open the door of a vestibule in a Pullman car, where the defects alleged were that the rail was bent, old, and worn, and that the catch was old and defective, plaintiff was limited in his proof to such defects, and could not prove that the guard rail was defective, in that it had not been properly latched.

On Motion for Rehearing.

3. MASTER AND SERVANT ☞99—INJURIES TO SERVANT—JOINT LIABILITY.

In a railroad employé's action for injuries, due to an alleged defective guard rail on a Pullman coach, the Pullman company and the railroad company hauling the Pullman coach, if liable at all for the injury, were jointly liable.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by T. L. Blackman against the San Antonio & Aransas Pass Railway Company, with the Pullman Company impleaded. Judgment for defendant against plaintiff, and against defendant in favor of the Pullman Company, and plaintiff appeals. Affirmed, and rehearing denied.

D. Fred Worth and John Sehorn, both of San Antonio, for appellant. Boyle, Ezell, Houston & Grover and Guinn & McNeill, all of San Antonio, for appellee.

SWEARINGEN, J. This is a personal injury suit by appellant, Blackman, against the San Antonio & Aransas Pass Railway Company, which impleaded the Pullman Company. Special issues were submitted to a jury. Judgment was rendered against appellant in favor of the appellee railway company, and against the railway company in favor of the Pullman Company.

The cause alleged was that appellant, while in the performance of the duties of his employment, used a handhold furnished on one of the Pullman cars in the railway company's train. Because the handhold was not a secure handhold, it pulled loose at one end, which caused appellee to fall and receive alleged personal injuries. Appellee railway company demurred, and denied the allegations, and answered that if any one were liable, as alleged in appellant's allegations, it was the Pullman Company, which owned

the car and by contract was bound to maintain it with secure handholds. The Pullman Company demurred to the petition of appellant and to the answer of appellee railway company, denied appellant's allegations and those of the railway company, and specially answered, among other things, that if the handhold was not a secure handhold, it was because appellant himself put it in the insecure condition.

Appellant was employed as a flagman on a passenger train traveling from San Antonio to Houston, and at Kennedy placed lights, markers, etc., on the end of a Pullman car which had come to Kennedy from Corpus Christi in another of the railway company's trains. This Pullman car was to be transferred from the Corpus Christi-San Antonio train to the San Antonio-Houston train and become the last car in the latter train, hence required the equipment, with markers, etc. After finishing with the duty of putting on markers, etc., appellant, in dismounting to adjust the air hose, used the handhold, which came loose at one end. The loosening of the end of the handhold caused appellant's fall. Further statement of facts will be made in our discussion of the assignments, inasmuch as the controlling questions are, first, whether there is evidence to support the finding of the jury that appellant himself placed the handhold in the insecure position; and, second, was the condition of the handhold negligence per se, because forbidden by the safety appliance statute (Rev. Civ. St. art. 6713).

The second assignment contends that there is no evidence to sustain the fact, found by the jury, that appellant himself insecurely adjusted the loose end of the handhold. This appliance served the dual purpose of holding the outside vestibule door back against the wall of the car when the door was open, and of being used as a hand support for those descending the steps of the car. To close the vestibule door, it was necessary to unlatch one end of this appliance, which was relatched to again hold the door when opened. Whenever the vestibule door was opened, the appliance should have been relatched. The door was in frequent use for ingress and egress. The appliance was consequently expected to be latched and unlatched. On the occasion of the accident the handhold came loose at one end, because it had not been securely latched.

[1] Appellant testified that the vestibule door was open and back against the car wall, and the handhold was apparently in secure position, when he first reached the car and used the appliance as a handhold; but, because the end was not in fact securely latched, the appliance came loose. He testified positively that he did not place the appliance in its position prior to his fall. The appellee undertook to destroy this direct testimony of appellant, and to establish the fact

that appellant himself opened the vestibule door and adjusted the appliance, by introducing in evidence the testimony of each of the porters, Pullman conductors, train conductors, auditors, and ticket collectors, who were in service at the time and place of the accident, each of whom testified that he did not open the vestibule door prior to the alleged injury, and, not having opened the door, it followed that not one of those testifying adjusted the handhold.

There was testimony that it was the right and duty of the flagman to open vestibule doors and adjust the handhold, if he found the door closed at the time he desired to equip the end of the car for the end car of a train. It was established by this process of exclusion that none of those in charge of either train opened the particular vestibule door prior to the alleged injury. It was also established that the appellant may have opened it himself. Unfortunately this elimination testimony is all based upon the presumption that the vestibule door had been closed at some time prior to the alleged injury. There is not one word of testimony that the door had ever been closed since its creation, not even testimony that it was the custom to close it. It was therefore unlawful for the jury to presume that appellant had opened the door himself, since such presumption was based upon the presumption that the door had at some time prior to the injury been closed. Ft. Worth Belt Ry. v. Jones, 106 Tex. 345, 166 S. W. 1130; Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1064; M. P. Ry. Co. v. Porter, 73 Tex. 307, 11 S. W. 324; Moore v. Hanscom, 103 S. W. 673; Lawson on Presumptive Ev. 569, rule 118. As there is no evidence that appellant himself adjusted the appliance prior to his fall, the assignment must be sustained.

What effect this conclusion will have upon our disposition of this appeal depends, as before stated, upon whether or not the insecure condition of the handhold violated the Texas safety appliance statute (article 6713). If it did violate that statute, the act was negligence per se, and appellees were compelled to establish the only defense available, which is that appellant adjusted it himself. G., H. & S. A. Ry. v. Kurtz, 147 S. W. 658. Having failed to introduce any evidence to prove this defense, the judgment would have to be reversed. But if the condition of the appliance is not controlled by the safety appliance statute, then appellant has not proven any negligence upon the part of the appellee because appellant has failed to prove that the insecure condition was due to acts of the appellee or remained in that condition for such a length of time as to constitute negligence on the part of appellee. M., K. & T. Ry. Co. of Tex. v. Jones, 103 Tex. 187, 125 S. W. 309. This latter conclusion would compel an affirmance, for the reason that appellant failed to establish his case; and, regardless of the jury's erroneous finding, judgment would have to be for appellee.

Article 6713, Revised Statutes of Texas, makes it unlawful for any common carrier engaged in moving intrastate traffic within this state to use "any locomotive, tender, cars, or similar vehicle which is not provided with sufficient and secure grabirons, handholds and foot stirrups." The use of the words "handholds and stirrups" in such close conjunction clearly indicates that they were associated in the legislative mind, and probably could have no application to any but freight cars. Stirrups are used on freight cars, and perhaps other cars, to reach the handholds which form a species of ladder by which employés ascend to the tops of cars, and undoubtedly those appliances were in legislative contemplation when the law of 1909 was enacted. It cannot reasonably be supposed that the Legislature contemplated that the door guard of a Pullman sleeping coach would be included in the word "handhold." Under such a latitudinous definition, a doorknob, the end of a seat, or any other part of a car that could be caught hold of by the hand, would be a "handhold." It was alleged in the answer that appellant "had no right to use said door guard as a support." The evidence was ample to show that the guard rail was an appliance for holding the door, and that there was on the car "what is called a handhold," and "that is a separate and distinct iron" from the guard rail or lever. The guard rail was placed on the car, not to form a "handhold" or "grabiron," but to hold the door open when so desired. It stood perpendicular with the end of the car when the door was shut, and was lowered across the door, and fastened in a socket fastened to the car, when the door was opened. The evidence shows that the guard rail is too close to the door when lowered to have been intended for a handhold, and that ample handholds are provided for passengers or employés. One of the witnesses described the appliance as "this little rod that holds the door open when it is opened up there." The guard rail was in perfect order and condition. The evidence clearly indicates that there was no necessity for appellant to use the guard rail as he did. All the evidence tends to show that the bar or guard rail was not attached to the car for a handhold, and was not intended to be used for that purpose. The guard rail was in perfect condition, and, when used as it was intended it should be, was "safe and secure." It was not a "grabiron, handhold, or stirrup," but was made to hold the door open when it was desired that it should be open. It did not fail to perform any function for which it was designed, and, if it did not perform a function for which it was not intended, it was not the fault of its construction, but the unsafeness of the rod as a handhold arose from the manner

of its use. There was no defect in the rod or the socket, but the uncontroverted evidence shows that the rod was not placed in the socket, which would have held it as it was intended that it should.

[2] Appellant alleged that the rod was bent, old, worn, and defective, and that the "latch or catch" "was old, worn, and defective," but failed to prove that, or that appellee had failed to place the rod in its socket. The jury found that the rod was not bent, nor the socket out of order. There was no evidence tending in the least to show that the safety appliance act was disregarded. The defects in the rod and socket were specifically alleged, and appellant must be confined to those defects. This proposition is elementary and axiomatic. There was no testimony that tended to show any defects in the rod and socket as alleged by appellant, and, failing on that proof, the only other ground of recovery alleged was that appellee "failed to properly and securely place the end of the said handhold, hand rail, or grabiron in the socket, slot, or receptacle provided for that purpose on said car, and by reason of the defendant's said negligence, when plaintiff took hold of said hand rail, handhold, or grabiron for the purpose of descending from) said car as aforesaid, and plaintiff avers that this negligence likewise caused and contributed to cause his said injuries." The testimony failed to show that the rod was left out of the socket through the negligence of appellees, and on neither count as to negligence was appellant entitled to a verdict.

There was no defect in the rod or socket, but the negligence, if any, was in the manner of its use. If the rod to fasten a door is a grabiron, handhold, or stirrup within the purview of the Texas statute, it was safe and secure. If the statute required the furnishing of a safe door, and the carrier did so, the fact that the door was left open could not affect the safety and secureness of the door itself. If the statute required a safe and secure lock to be furnished, the failure to lock it would not be a violation of the statute. We are of the opinion that appellant failed to establish a case of liability against appellees.

The judgment is affirmed.

## On Motion for Rehearing.

FLY, C. J. A large portion of appellant's motion is devoted to a discussion as to whether the statute applies to passenger as well as freight cars, and it may be admitted that it does, and the expression which may be construed otherwise is stricken from our former opinion.

In this case the liability of appellee depends first upon the establishing of the fact that the Pullman car was defective, or upon the further fact that appellee had been guilty of negligence in leaving the bar out of the slot. The defects as alleged by appellant consisted in the "handhold or grabiron on said Pullman car" being "old, bent, and defective," and the "latch or catch provided on said car to hold the end of said hand rail, handhold, or grabiron in place was old, worn, and defective." The testimony utterly failed to sustain that allegation, for the jury found that the bar of iron was not defective, and therefore there was nothing to prevent the "hand rail, handhold, or grabiron" from fitting in the socket. The evidence showed that it was in perfect condition, and it follows that appellee could not have been negligent, unless it had been negligent in other respects. It also follows that, if the "handhold, hand rail, or grabiron" was not defective, as alleged, the case cannot be brought within the safety appliance act, even though the Legislature had prominently in view, when enacting the safety appliance law, a guard rail on a Pullman car used for keeping the door shut. There was an utter failure of the testimony to establish any defect alleged. The elementary principle that allegation must be answered by proof applies in this case as in any other. The other allegation of negligence was that the bar of iron was not properly placed in the slot or socket made for it. The evidence failed to show that appellee had any connection with such negligence, and the jury so found.

In the motion for new trial it is not claimed that there had been any violation of the safety appliance act, and there is not one word in the brief about any safety appliance. The first assignment of error complains of uncertainty in the answers of the jury to the issues submitted by the court. The second assignment is to the effect that, if the jury found that appellant opened the vestibule door, it is contrary to the evidence; and the third and last assignment is directed at a refusal of the court to give a special charge requested by appellant. The case was tried in the lower court on the basis of negligence in a failure to place the guard rail in the slot or socket.

If, as so vigorously contended in the motion for rehearing, the guard rail for the door was a handhold within the contemplation of state and federal law, the evidence utterly fails to sustain the allegations as to the defective condition of the guard rail, but, on the other hand, shows it to have been in perfect condition. It was not alleged that a failure to place the bar in the slot or socket rendered it defective under the terms of any law. Appellant did not think that leaving a door open or a rail out of a slot rendered an appliance defective, for he pleaded the defects and then pleaded negligence in the failure to place the guard rail in the slot or socket. If it be admitted that the bar at the door of the Pullman car was a handhold fully within the purview of the safety appliance act, and that it was defective because it was

not placed in the slot, still the evidence fails to show that appellee was responsible for the condition of the guard rail at the time of the accident.

[3] We have considered this case from the standpoint of the liability of appellee for the defective condition of the Pullman and the negligence of Pullman employés, as that proposition seems well established. Dwinelle v. Railway, 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611; Railway v. Roy, 102 U. S. 451, 26 L. Ed. 141; Blake v. Railway, 38 Tex. Civ. App. 337, 85 S. W. 430; Pullman Co. v. Norton, 91 S. W. 841. The two companies were, if liable at all, jointly liable.

The motion for rehearing is overruled.