### TEXAS INDEMNITY INS. CO. v. STAGGS.

#### No. 13592.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 23, 1940.

Rehearing Denied March 22, 1940.

W. P. Z. German, of Tulsa, Okl., Robert M. Turpin, of Midland, and Bert King and Harold Jones, both of Wichita Falls, for appellant.

Napier & Napier, of Wichita Falls, for appellee.

DUNKLIN, Chief Justice.

The Texas Indemnity Insurance Company has appealed from a judgment in favor of Mrs. Dovie Staggs, surviving wife of H. T. Staggs, deceased, for herself and minor children, as compensation under provisions of the Workmen's Compensation

Law, Vernon's Ann.Civ.St. art. 8306 et seq., of this State.

For convenience, Mrs. Staggs will be designated as plaintiff, and the Insurance Company as defendant; which is the reverse of their positions in their pleadings, under provisions of the Workmen's Compensation Law.

H. T. Staggs was an employee of the Skelly Oil Company, who carried a policy of insurance with appellant, as required by that Act. He was an engineer for that company, supervising the engines used in the company's pumping plant and keeping them in running order. It did not require all his time to perform his work, but he was required to be in and out of the pumping plant to see that the engines were working properly for 24 hours a day. The main plant of the Skelly Oil Company was located in the town of Burkburnett, where A. H. Bazell, its president, resided. The plant where Staggs was employed was designated as the "booster plant" and was located five or six miles from Burkburnett. Staggs worked nearly all night of October 31st, 1935, repairing a slight leak in the exhaust pipe of engine No. 10 that he had discovered was not properly functioning. He went from the plant to his home, situated on the company's premises, about eight o'clock of the morning of November 1st, 1935, and there had breakfast with his family. Shortly after finishing his breakfast he left his home to resume his work, and about 9:45 o'clock of the same morning he was found dead, lying on the floor of the office of that plant. About 9:30 o'clock of that morning A. H. Bazell, superintendent of the Skelly Oil Company, called Staggs over the telephone from the Burkburnett office to inquire whether or not he had succeeded in putting engine No. 10 in working order. After a rather prolonged conversation between them, Bazell gave Staggs some instructions that called for a reply, to which Staggs made no reply. Some fifteen minutes later he put in another call for Staggs and receiving no reply he sent a man to investigate, through whom he later learned that Staggs had been found dead.

We quote the following statement from appellant's brief, which is not challenged by appellee: "The facts evidence that the engine was located in a large corrugated iron building about seventy by sixty feet. Exhibit No. 12 is a photograph taken at the plant showing the distance from the plant to the house in which Staggs resided, about 600 feet. Exhibit No. 11 shows the office, with its relation to the plant. There are some half dozen ventilators 7 by 1 feet in the top of said building, and its walls were some twelve feet high, with a double gable or half pitched roof; that there were some six windows in the building, two doors in the south, two doors in the east, and one door each in the north and west of said building, and one south door and one east door were open at the time Staggs' body was found. The building was rather an open one, the corrugated iron not going down to the ground; that some ten pipes entered the building, and the corrugated iron was cut away for such pipes, and the iron was not fitted to such pipes. All around the building the corrugated iron was simply put up against the frame, which left an air space at the frame because of the corrugation. From the engine upon which deceased Staggs had been working to the south door of the engine room, same being the nearest door to the office building, was some forty feet, and the east door of the engine room was some sixty feet from the office. The office was some six by twelve feet in dimension, and was just east of this corrugated iron building which housed the engines, but was some twelve feet away from the engine building. It was approximately twenty-five feet, however, from the south door of the corrugated iron building to the door of the office. The office is just east of the corrugated iron building, but its front is a little further south than the front of the engine building. At the time Staggs' body was discovered, the wind on that November morning was from the south. It was real cool, and the wind was blowing across his body in the open doorway of the small office building. His body was located right near or down beneath the telephone on which he had been talking to his foreman, Bazell; the telephone receiver, however, was hung up."

This suit was instituted by Mrs. Dovie Staggs, wife of the deceased, for the benefit of herself and three minor children, to recover compensation for the death of her husband, H. T. Staggs. It was alleged that while engaged in the duties of his employment he was poisoned by inhalation of carbon monoxide gas that escaped from an engine while he was repairing it, and also that he fell and struck his head on some hard object while descending stair steps

after he had finished his breakfast on the morning of November 1st, and was returning to his work. Following those allegations plaintiffs pleaded as follows: "And the plaintiffs allege that said fall and the inhalation of the carbon monoxide gas, both and each caused and contributed to the death of the said H. T. Staggs, deceased."

Following are findings by the jury in answer to special issues, together with an instruction by the court pertinent thereto:

"Instruction C: You are instructed that the term 'producing cause' as used in this charge, is that cause which, in a natural and continuous sequence, produces the death in issue, and without which the death would not have occurred.

"An accidental injury is an injury as defined above which is caused by a sudden, undesigned, unforeseen and unexpected occurrence of calamitous nature being definite as to time and place.

"1. Do you find from a preponderance of the evidence that the deceased, H. T. Staggs, fell while descending the steps of his house on the morning of November 1st, 1935? Answer: He did.

"2. Do you find from a preponderance of the evidence that the deceased, H. T. Staggs, sustained accidental injury to his head in so falling, if he did fall? Answer: He did.

"3. Do you find from a preponderance of the evidence that such injury, if any, was a producing cause of the death of the said H. T. Staggs, deceased? Answer: Yes.

"4. Do you find from a preponderance of the evidence that such injury, if any, was sustained in the course of his employment with Skelly Oil Company? Answer: Yes.

"5. Do you find from a preponderance of the evidence that the deceased, H. T. Staggs, inhaled carbon monoxide gas on or about the 1st day of November, 1935, in the employer's pumping station? Answer: He did.

"6. Do you find from a preponderance of the evidence that the said H. T. Staggs, deceased, sustained an accidental injury as the result of the inhalation of such gas, if any? Answer: He did.

"7. Do you find from a preponderance of the evidence that such injury, if any, was a producing cause of the death of the said H. T. Staggs, deceased? Answer: Yes.

"8. Do you find from a preponderance of the evidence that such injury, if any, was sustained in the course of his employment while in the employ of Skelly Oil Company? Answer: Yes.

"9. Do you find from a preponderance of the evidence that the death of the said H. T. Staggs was not caused solely by disease? Answer: It was not caused solely by disease."

It is insisted by appellant that the evidence was not sufficient as a matter of law to show that the death of Staggs was caused by either gas poisoning or by an injury to his head, resulting from a fall, as alleged in plaintiff's petition and as found by the jury.

An autopsy was performed by Dr. D. R. Venable at the request of Dr. Jones, acting for the insurer but who took no part in that operation. Dr. Venable found the cerebral hemorrhage was caused by a rupture of the caretoid artery, which was sclerosed and high blood pressure, from which Staggs had suffered theretofore, plus the degenerated condition of the surrounding brain tissues, and he found no evidence indicating poison from carbon monoxide gas as a cause of the hemorrhage; and further, that such poison would have caused death immediately after it was inhaled. According to the testimony of Dr. L. D. Parnell, who did not participate in the autopsy but who was duly qualified to give his opinion as an expert, if Staggs had inhaled carbon monoxide gas while working on the engine in question during the night of October 31st, in sufficient amount to produce death, he most likely would have died therefrom within a few minutes and long before he went to his office after eating his breakfast, although it could have caused his death weeks, months or years later if the poison is inhaled in only small quantities. But according to testimony of both those physicians, fatal poisoning from carbon monoxide gas is always evidenced by a reddish discoloration over the upper part of the body. Dr. Venable testified positively and unequivocally that there was no such discoloration on the body. Several lay witnesses who viewed the body testified they did not notice any such discoloration. Mrs. Staggs alone testified that his skin was of a pink color, although she viewed his body from the door and immediately after hearing of the death. A. H. Bazell,

the superintendent, testified that after learning of the death he went from Burkburnett to the pumping plant and found gas escaping in small quantities from engine No. 10, on which Staggs had worked during the night of October 31st. Mrs. Staggs testified that when she went to the engine house after learning of the death of her husband, she detected the odor of gas.

In appellant's brief, reference is made to the foregoing testimony, followed by the argument that it was insufficient to make out a prima facie showing of death from gas poisoning, in the absence of any testimony that while Staggs was working on engine No. 10 carbon monoxide gas was escaping therefrom and that he inhaled it in sufficient quantities to poison him and that by reason thereof he died about 9:30 o'clock on the following day; and that to hold otherwise would be to violate the familiar rule forbidding the building of inferences upon inferences.

In briefs for appellees, no other facts are pointed out to support the allegation and proof of death from inhalation of carbon monoxide.

▮▮▮ We concur in the reasoning advanced by appellant that in order to support the allegation and findings by the jury in answer to issues Nos. 5, 6 and 7, in substance that Staggs inhaled carbon monoxide gas which was a producing cause of his death, within the meaning of "producing cause", as defined in the court's charge to the jury, it would be necessary to indulge and build presumptions or inferences upon presumptions or inferences, in violation of the rule that "a presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved." Fort Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S.W. 1130, 1132; 17 Tex.Jur. 247, and other decisions there noted. Such evidence raised only a surmise or suspicion of the fact sought to be established and amounted to no more than a scintilla of proof, which, in legal contemplation, fell short of "any evidence." Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

But we cannot say, as insisted by appellant that the evidence was wholly insufficient to support the findings of the jury in answer to special issues Nos. 1, 2, 3 and 4, that Staggs fell while descending the steps of his home on the morning of November 1st, 1935, from which he sustained an injury to his head that was a "producing cause" of his death, within the meaning of that term, as defined in the court's charge.

Mrs. Dovie Staggs testified in part as follows:

"Q. Now, Mrs. Staggs, this morning I believe you told us he had been having trouble this night with engine No. 10? A. Yes, sir.

"Q. That morning did he come home to his breakfast? A. Yes, sir.

"Q. You know what time it was? A. About 8 o'clock.

"Q. After he had his breakfast, after he was there awhile, tell the jury whether there was any warning from the horn of any trouble? A. No, sir, just as he got through eating breakfast the horn on the front porch blew and he went out to cut it off and to go to the plant and fell down the steps; there's a concrete block right by our steps and he stumbled and fell down there and he got up and sat on the porch, rubbing his head and right shoulder, and I sat there by him a minute, and rubbed his head, and he got up and went on to the plant to see what was wrong.

"Q. You recall which side he hit the ground, the right or left? A. It was his right side of his head and his right shoulder.

"Q. While he sat on the porch did he make any complaint of present pain in his head? A. Yes, sir, he said his head hurt a little but he went on down to the plant to see what the trouble was.

"Q. Did he make any complaint of present pain in his shoulder? A. Yes, sir, he said his shoulder hurt; he rubbed his shoulder and his head also, and I rubbed his head.

"Q. Did he rub his head? A. Yes, sir, he rubbed his head and I did, too.

"Q. What part of his head did he rub? A. Right along here.

"Q. You are pointing to the right side above the right ear? A. Yes, sir.

"Q. Is that where it was? A. Yes, sir, it made a little swelled place on his head.

"Q. You felt that when you put your hand on it? A. Yes, sir.

"Q. You know how long he sat there? A. Not but a few minutes.

"Q. You mean 10 or 15? A. Just about ten minutes.

"Q. And where did he go from there? A. He went straight to the plant.

"Q. You never saw him any more until you found him dead in the office? A. No, sir."

Dr. Venable testified that he found no external evidence of an injury or bruise on the head, in the absence of which death could not be attributed to the fall testified to by Mrs. Staggs; and further that if Staggs had sustained an injury to his head when he fell, sufficient to cause death, his death would have ensued almost immediately. But he further testified that the blood clot was principally in the ventricle leading to the right side of the brain, and about 3 inches above the right ear.

In the opinion of Dr. Parnell, an injury to the head might produce death several hours later, and that, too, in the absence of external evidence of the blow.

Under a long settled rule of procedure, as against the contention that a finding of fact by the jury is without sufficient support in the evidence, the testimony in support of the verdict must be weighed to the exclusion of any evidence of a contrary import, and if the same reasonably tends to support the finding that challenge of the finding will be overruled. 3 Tex.Jur. sect. 765, p. 1090. In view of the evidence cited above in connection with other circumstances tending to corroborate it, which we will not undertake to enumerate, the proposition now under discussion cannot be sustained without violating that rule of procedure.

Appellant submits this further proposition: "Considering the court's charge as a whole, the judgment must be reversed and rendered unless the evidence sustains the finding that the blow was a producing cause of death, and also the finding that carbon monoxide poisoning was a producing cause of death."

Appellees submit this counter proposition: "The jury having found that monoxide gas was the producing cause of the death, and also that an injury to the head was the producing cause of the death, it is immaterial that the evidence is insufficient to sustain the finding upon both propositions, it being sufficient, if the record sustains the jury's findings that the head injury produced the death of Mr. Staggs."

The merits of those two contentions were submitted to the Supreme Court by this question: "Were the findings of the jury, in answer to special issues Nos. 1, 2, 3 and 4, sufficient, of themselves, to support the judgment rendered awarding plaintiffs compensation for the death of Staggs, independently of further findings in answer to special issues Nos. 5, 6 and 7, which had no sufficient support in the evidence adduced?" And, as shown by the opinion of that Court, Tex.Com.App., 134 S.W.2d 1026, dated January 3rd, 1940 (not yet published [in State Reports]) that question was answered in the affirmative.

Accordingly, the judgment of the trial court is affirmed, upon findings of the jury in answer to issues Nos. 1, 2, 3 and 4, and those in answer to issues Nos. 5, 6 and 7 will be disregarded.