ROBERTS C. GRISWOLD

V.

GREGG, SON & COMPANY.

*Negotiable Instruments—Notes—Gaming Contracts—Option Deals on
Board of Trade—Instructions.*

In an action on a promissory note, where the defense is that it was given
by the defendant to the plaintiff as a commission merchant in settlement of
differences arising under a contract to deal in options on a board of trade
for the defendant's account, it is improper to instruct the jury that the
plaintiff can recover if he intended at the time of the purchase or sale to
receive or deliver the grain bought or sold, the test of the character of the
contract being the intention of the parties thereto.

[Opinion filed December 9, 1887.]

Griswold v. Gregg, Son & Co.

In error to the Circuit Court of Livingston County; the Hon. Alfred Sample, Judge, presiding.

Messrs. Strawn & Patton, for plaintiff in error.

Messrs. McIlduff & Torrance, for defendant in error.

Lacey, J. This suit was brought by defendants in error against plaintiff in error to recover on certain promissory notes amounting in the aggregate to $2,192.34, given by plaintiff in error to defendants in error. No general issue was pleaded, but the defense set up by special plea by plaintiff in error was, in substance, that defendants in error were commission merchants dealing on the board of trade at Chicago, and made arrangements with defendants to ostensibly buy and sell grain on the board, but that all losses and gains be settled between them by the mere payment of differences in money, it being understood that no delivery of grain was to be made by either party, and that the notes sued on were given to cover plaintiff in error's losses under said gambling contract.

According to the plaintiff in error's testimony, prior to the time he commenced to deal with the defendants in error on the board of trade, he had an express agreement with them that he would deal in options, buy grain on the board of trade where the grain would not have to be taken, and if the price was more, when the time arrived to take it the difference was paid in money, and if plaintiff in error sold and the price was less, defendants in error paid the money, no grain to be delivered. Upon this agreement the defendants in error were to be paid one-eighth of a cent per bushel for commission. The deal in substance was between plaintiff in error and defendants in error, the former selling with the latter on account of such deals, not knowing with whom the defendants in error dealt on the board of trade. According to the evidence of plaintiff in error, the contract was essentially a gambling contract, in its nature the same as that in Pearce v. Foote, 113 Ill., 228, and, as decided in that case by the court, obnoxious to the

provisions of the statute against option contracts. As between the plaintiff in error and defendants in error, if this was a gambling contract, they were both principals and stood to each other in the relation of principals. As is said in Pearce v. Foote, *supra*, "There is and can be no such thing as agency in the perpetration of crime or misdemeanor, or indeed, of doing any unlawful act. All persons actively participating are principals."

The defendants in error testified that the deals were not to be and were not fictitious but *bona fide*, and the intention was to deliver the grain, and they acted merely as plaintiff in error's agent.

A long course of dealing was had on the board of trade by defendants in error for plaintiff in error and all the deals were settled on difference; no grain was actually delivered. The jury found a verdict for defendants in error on the notes, and judgment was rendered thereon, from which this writ of error is issued out.

One of the main causes for error assigned by plaintiff in error is the giving of defendants in error's 13th instruction. The objectionable part of the instruction reads as follows: "And in this case, if you find from the evidence that Gregg & Son, as the agents or commission merchants of defendant, Griswold, either bought or sold, or both bought and sold, all the grain for the defendant in good faith, intending at the time of the purchase or sale, as the case may have been, to receive or deliver the grain, you will find for the plaintiffs, although you may further believe from the evidence that at the time or times of such purchase or sale the defendant had no grain and did not intend to receive or deliver any actual grain."

This puts the test of the character of the contract on what was done or intended by and between the appellees in their transactions on the board of trade with their customers, and not on what was the agreement between plaintiff in error and defendants in error. The plaintiff in error Griswold testifies that the only agreement between him and defendants in error, was that the latter were to deal with him as agents in strictly

option deals on the board of trade. So as between plaintiff in error and defendants in error the former was not to be called on to actually deliver any grain and in fact he never was requested to deliver grain or notified he had to do so, or to receive any. He was not concerned as to how the defendants in error dealt with their customers; for as between him and them it was strictly an "option" deal as he swears.

In what manner they made up their books with their board of trade customers he was not concerned, and in fact he did not, nor could he know with whom appellees dealt. This case in its facts and the principle governing it is much like the case of Pearce v. Foote, *supra*. As is said in the case cited in reference to the facts therein, and which applies equally well in this case, plaintiff in error "contracted to give" defendants in error, "the privilege to deal in options and settle with him upon differences, as indicated or determined by the fluctuations of the market." This was testified to by the plaintiff in error. Now the instruction complained of raises an immaterial issue and virtually takes from the jury all consideration as to what the contract was, between plaintiff in error and defendants in error, which was the vital issue in the case. If the defendants in error dealt on the board of trade in a *bona fide* manner, free from the charge of "gambling," they must have undertaken to receive and deliver the grain on their own account, for they were not authorized to make absolute contracts, as claimed by plaintiffs in error, on his account, and if they were not so authorized he was not bound to fill such contracts and indeed never was called on to do so.

It seems to us that where the evidence, as in this case, so strongly tends to show that the transactions on the board of trade were intended, as between the plaintiff in error and defendants in error, to be "gaming" contracts, the instruction complained of must have confused the minds of the jury and produced the result attained.

There are other minor objections to the record urged by plaintiff in error but they not being of great importance we will not notice them in detail further than to say that in them-

selves, if error, they would not be of sufficient importance to reverse.

For the error above indicated the judgment in the court below is reversed and the cause remanded.

*Reversed and remanded.*