TEXAS CENTRAL RAILWAY COMPANY v. M. PRUITT.

No. 1835.    Decided May 6, 1908.

**Railway—Fences—Killing Live Stock.**

The immunity of a railway company from liability for killing live stock in the absence of negligence where the company fences its road (Rev. Stats., art. 4528) extends only to cases where such fence is sufficient to prevent ingress and egress of live stock of ordinary docility. It is not relieved from liability where the fence becomes insufficient, though it has used ordinary care to maintain it. (Pp. 552, 553.)

Question certified from the Court of Civil Appeals for the Sixth District, in an appeal from Erath County.

*Martin & George,* for appellant.

*Nugent & Carter,* for appellee.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals for the Sixth Supreme Judicial District. The statement and questions are as follows:

"The Court of Civil Appeals of the Sixth Supreme Judicial District desiring to certify the hereinafter stated question to the Supreme Court of the State of Texas, makes known to that court that the above styled and numbered cause is now properly and in full requirements of law pending in this Court of Civil Appeals, and pending therein for rehearing on a proper written motion for rehearing legally and properly filed by appellant in the time and manner required by law and with legal notice thereof to appellee, from a determination of the case by this Court of Civil Appeals in written affirmance of the judgment rendered by the trial court.

"The appellee instituted the suit against appellant in the Justice Court to recover $125, the value of a mule that was alleged to have been killed by a locomotive of the railway company. Appellee recovered a judgment against the appellant in the Justice Court, and the appellant appealed to the County Court. The appeal to the County Court was perfected in the manner and terms required by law. In the County Court the appellee, in a trial before a jury, recovered a judgment for $125 against appellant; from which judgment the appellant has perfected an appeal in all requirements of law to the Court of Civil Appeals.

"The allegations in appellee's trial petition in Justice Court, which were the same in County Court, are to the effect that the mule was run over and killed on the right of way by a locomotive of the appellant which was then being operated on its track; that the mule "was permitted by the railroad company to enter upon its track through a defective gate upon its right of way, and which said gate the defendant permitted to remain in a dilapidated condition." Appellant answered by general denial, and "that at the time and at the place where the said animal was killed the right of way was enclosed by a good and sufficient fence, and that the gate in said fence at said time and place was in good repair," and "that the agents and employes were exercising ordinary care at the time in the operating of said train."

"At the trial of the case in the County Court the court instructed the jury to the effect that if the railway company had fenced its right of way and erected gates in its fence it would not be liable in this case for killing the mule, but if the jury found from the evidence that the company had failed "to erect substantial gates sufficient to turn ordinary stock and to keep its said gates in repair as to substantial defects in such gates the company would be liable." The appellant requested the following special charge, which was by the court refused:

" 'If you believe from the evidence the defendant railway company had its right of way fenced at the time and place where the plaintiff's animal is alleged to have been killed, and that gates had been put in on said right of way fence for the use and benefit of the plaintiff in this case, and if you further believe from the evidence that the gate put in by the defendant company was such a gate as a person of ordinary care would build, and that the defendant company used such care as a person of ordinary prudence would exercise under

the same or similar circumstances to keep such gate in substantial repair, then you will find for the defendant company.'

"The appellant, in appropriate assignments of error, complains of the court's charge to the effect (1) that it is not required to erect and maintain a substantial fence sufficient to turn ordinary stock; (2) that the charge requiring the company "to keep the fence in repair" imposes upon the railway a greater degree of responsibility than authorized by law; (3) that the law only imposes a liability upon the company for failure to exercise ordinary care to repair the fence, where the road has once been fenced. Appellant complains that the court should have given the special charge because (1) the railway company is only required to exercise ordinary care to maintain the fence, after it is once erected, and its liability after once the fence is erected is dependent upon the failure to exercise ordinary care to maintain it, and (2) the standard to judge its liability for repair of the fence is ordinary care.

"The facts that gave rise to the court's charge, and material to the question, are: Appellant's line of railway runs through the appellee's farm. Appellee's house and barn and pasture are situated on the north side, and the cultivated portion of his farm is situated on the immediate south side of the railway track. Upon each side of the track running through this farm the railway company had, some time previous to the suit, erected a wire fence—the height and kind not given in the record. About four years previous to the injury sued for the appellant, in compliance with a statutory demand by appellee, placed a gate in its right of way fence to enable appellee to get to and from the parts of his farm situated on immediate opposite sides of the railway right of way. Appellee had nothing to do with, or control over, the gate, or opening, in the fence. The gate was made of plank, and placed in and as a part of the fence, and arranged so as to slide between posts of the fence, and fastening, when closed, at the end of a post in the fence. This fastening consisted of a little piece of plank that extended out resting on a like plank nailed to the post. The gate when shut was about four feet high at one end and thirty-eight (38) inches at the other end resting on the ground. Appellee turned his mule in his pasture late one evening, and next morning he found the mule inside the right of way, near the appellant's track, dead, having escaped from the pasture over the gate on to the right of way some time during the night. The appellant's locomotive fireman testified that the mule was struck and killed by the locomotive of appellant that night, while the engine was running down grade at the rate of thirty-five (35) miles per hour. The gate was closed when the mule was put in the pasture, and was closed early next morning when appellee began searching for his mule, and it was not through means of the gate's being left open that the mule got on the right of way. Appellee proved by witnesses that for several weeks prior to the injury the gate was out of repair, and that appellant's section foreman had been notified of its condition. The condition of the gate at the time of and before the injury is described by the witnesses testifying for appellee; the cross piece for the gate nailed to the post in the

fence had been broken at one end and would not hold the gate off the ground to the latch of the post, and when so resting on the ground, though closed, it was so low at that end that a person could step over it, one witness testifying that he did step over. The section foreman for appellant testified that the piece mentioned as broken off had been broken off, but that it did not affect the gate when shut, as without this piece at this end it would be about thirty-eight (38) inches high; and that otherwise the gate was in fairly good repair and condition. We concluded that the opening in the fence was insufficient to turn ordinary stock of ordinary disposition.

"We disposed of the case by written opinion in affirmance; and in disposing of the contention of appellant as to the charge of the court and the special charge hereinbefore mentioned, we held that the court did not err. In deciding the contention, we held:

"By the provisions of article 4528, Revised Statutes, to escape the absolute liability it declares in favor of the owner for the value of the stock killed by its locomotives and cars, a railway company in the given case must show that it had its road "fenced in"—that is, inclosed in such a way as at least under ordinary circumstances to effectually exclude livestock of the ordinary kind and docility from entering upon its roadbed and tracks. The obvious purpose of the law would not be accomplished if it should be held that a railway company had fully discharged its duty under it when it had so "fenced in" its road. To accomplish that purpose the statute must be so construed as to make it the duty of the railway not only to so "fence in" its road, but after it has done so to keep it so "fenced in" as in the first instance, to exclude livestock of ordinary disposition and docility from entering upon its roadbed and tracks."

"And that the portion of article 4528, Revised Statutes, which reads: "If the railway company fence in their road they shall then only be liable in cases of injury resulting from want of ordinary care," does not have reference to the fence, or its maintenance or repair after construction, but means and refers to the common law liability for injuries to the livestock on its roadway occurring through want of ordinary care in the operation of its trains. The law decided and applied by this court in the necessary disposition of this question presented to us, viz: that the duty the railway company owes to the owner of the livestock under article 4528, Revised Statutes, is to have the road, at the time of the injury, so fenced in as to exclude ordinary livestock of ordinary disposition and docility, is apparently at variance with the law on the same question decided and applied in the case of Gulf, C. & S. F. Ry. v. Cash, 8 Texas Civ. App., 569, followed in International & G. N. Ry. v. Erwin, 67 S. W. Rep., 466, and Galveston, H. & S. A. Ry. v. Reitz, 65 S. W. Rep., 1088, which reads: "that after fences have once been erected as required by law, the company is only liable, under this statute, for a negligent failure to maintain such fences, and that the charge quoted above is erroneous."

"The appellant in this case urges, in the motion for rehearing now pending, that our opinion in this cause on the law applied to the decision of the question raised is in conflict with the opinion

as to the law in the cases referred to. We have arrived at the opinion in the decision of this cause, that the duty the railway company owes to the owner of the livestock, under article 4528, Revised Statutes, is to have the road, at the time of the injury, so fenced in as to exclude ordinary livestock of ordinary disposition and docility. We are not inclined to concur, nor do we agree with' the conclusion of law rendered by the Court of Civil Appeals in the case of Gulf, C. & S. F. Ry. v. Cash, 8 Texas Civ. App., 569, and the cases following that decision, wherein article 4528, Revised Statutes, is construed as the law, "that after fences have once been erected as required by law the company is only liable, under this statute, for a negligent failure to maintain such fences." We therefore respectfully certify the questions:

"1.   On the facts stated should article 4528 of the statutes be construed as requiring a railroad company, after it has fenced in its right of way, to maintain the fence in such a condition as under ordinary circumstances to effectually turn livestock of ordinary disposition and docility; or should it be construed as requiring such company to exercise only ordinary care to so maintain its fence, in order to escape liability to the owner for stock killed by the operation of its trains, when such stock had entered upon its track over its fence?

"2.   Did we err in holding that the court did not err in its charge to the jury, and did not err in refusing the special charge, because the duty the railway company owed to the owner. of the livestock, under article 4528, Revised Statutes, was to have its road, at the time of the injury, so fenced in as to exclude ordinary livestock of ordinary disposition and docility, and not the duty merely to exercise ordinary care to maintain the fence?"

We answer the first question that in our opinion, under article 4528 of our Revised Statutes, it is the duty of a railroad company, after it has fenced in its right of way, to maintain the fence in such condition as under ordinary circumstances to effectually turn livestock of ordinary disposition and docility, and it follows that the second question should be answered in the negative.

The article of the statute reads as follows: "Art. 4528. Each and every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such railroad company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. If the railroad company fence in their road, they shall only then be liable in cases of injury resulting from want of ordinary care." It is clear that the purpose of the statute was to give immunity for the killing of livestock, solely upon the condition that the railroad company had fenced its right of way. As to expressing the intent of the Legislature the provision is meagre. It simply says, "if the railroad company fence its road," and says nothing about maintaining its fence, but we think it is clearly implied that the fence must not only be erected, but duly maintained as a fence. It was certainly not intended that a railroad company could

secure the immunity of the statute by making a fence one day and permitting it to get out of repair the next. Neither is the kind or character of the fence defined. .But to fence against livestock clearly means so to enclose the land by an obstruction as to prevent the ingress and egress of such stock. In Ft. Worth & Rio Grande Ry. Co. v. Swan (97 Texas, 338), it was held, that a partial enclosure did not exempt the company from liability, though it was shown in that case that the animal for the killing of which a recovery was allowed, did not enter upon the company's right of way at the opening. In the case of The Cleveland, Columbus, Cincinnati & Indianapolis Railroad Company v. Swift (42 Ind., 119), the court in speaking of a gate which had been put in the fence of the company's right of way and which had been left insecure say: "If the railroad company allow an opening to be made in the fence and left insecure, it can not any longer be said that the road is securely fenced, and the company is, by the statute, liable for the animals killed, without any proof of negligence on the part of the company."

The condition upon which the immunity is allowed, is that the road shall be fenced; that is, that it shall be sufficiently enclosed to prevent the passage of livestock and not that it shall exercise ordinary care to see that it is maintained in that condition.

For the reasons given, the questions are answered as above stated.