## Garrett Pluym, Appellee, v. Illinois Central Railroad Company, Appellant.

### Gen. No. 6,864.

1. TRIAL, § 193*—*evidence and presumptions upon motion for directed verdict.* Upon motion for directed verdict, the party against whom such motion is directed is entitled to the benefit of all evidence in the aspect most favorable to him and to all presumptions which may reasonably be drawn therefrom, and all contradictory or explanatory evidence must be rejected.

2. RAILROADS, § 798*—*duty to fence.* The statute requires railroads to erect and maintain fences on both sides of their road, and this requires that such fences be erected along the lines of the right of way.

3. RAILROADS, § 798*—*duty to fence statutory.* At common law railroads were not required to fence their right of way.

4. RAILROADS, § 798*—*kind of fence required along right of way.* The statute does not specify the kind of fence required but it must be "suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad," and its sufficiency is a question to be determined from the facts in each case.

5. RAILROADS, § 798*—*sufficiency of fence along right of way.* A railroad company has sufficiently complied with the statute requiring it to fence its right of way, where it has built and maintains a fence which under ordinary circumstances will prevent the passage of animals not more than ordinarily unruly or breachy, and it will not be liable for injury to stock breaking through such fence unless guilty of wilful negligence.

6. RAILROADS, § 798*—*sufficiency of fence.* A railroad which has built and maintained fences along its right of way is not liable for injury to cattle that, because of unusually high water which nearly covered the fence, by swimming over and breaking the upper wire have entered upon the railroad track.

Appeal from the Circuit Court of Jo Daviess county; the Hon. CLINTON F. IRWIN, Judge, presiding. Heard in this court at the October term, 1920. Reversed with findings of fact. Opinion filed March 17, 1921.

MARTIN J. DILLON, for appellant; JOHN G. DRENNAN, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

M. H. Cleary, for appellee.

Mr. Justice Heard delivered the opinion of the court.

This is an action of trespass on the case brought by appellee against appellant. The declaration consists of one count, which alleged that appellant failed to maintain a statutory fence along its right of way and that by reason thereof appellee's cattle got upon appellant's railroad tracks and were killed. Upon the trial the court instructed a verdict for appellant upon which judgment was entered. Upon appeal this court reversed and remanded the cause holding that the court should have submitted the case to the jury *Pluym v. Illinois Cent. R. Co.*, 217 Ill. App. 660 (abst.). A second trial resulted in a judgment in favor of appellee for $330 damages and $225 attorney's fees, from which judgment this appeal was taken.

It is contended by appellant that the court should have instructed the jury to find the defendant not guilty. Where a motion is made to direct the verdict upon the trial of an issue, the party against whom the motion is directed is entitled to the benefit of all the evidence in his favor in its most favorable aspect to him, and of all presumptions that may be reasonably drawn from such evidence. The evidence is not weighed and all contradictory evidence or explanatory circumstances must be rejected. *Yess v. Yess*, 255 Ill. 414; *McCune v. Reynolds*, 288 Ill. 188. Applying this rule to the present case, we are of the opinion that the court did not err in refusing to direct a verdict for appellant.

It is claimed by appellant that under the facts of this particular case the fence in question was shown by the evidence to be, as an ultimate fact, a fence erected and maintained in compliance with the statute.

The right of way and tracks of appellant run southeasterly from the City of East Dubuque, about a mile

from which city the cattle were found dead upon the right of way. The land to the northeast of the right of way is high and bluffy. The main channel of the Mississippi river is about a mile westerly from the place where the cattle entered upon the right of way. Between the river and the tracks is low ground which was generally used by appellee as a pasture, but which at the time of the trial had a crop of corn growing upon it. This land is what is called bottom land, and is several feet lower than the railroad tracks. When the Mississippi rises this land is partly submerged. The river was very high from April 8 to June 13, 1916, at which last mentioned time it was 14.7 feet above low watermark, and appellee's pasture was almost entirely submerged, the nearest portion not covered by water being several hundred feet distant from the point where the cattle entered the right of way. The water at this point extended 8 or 10 feet within the right of way.

In 1913 or 1914, appellant erected along the line of its right of way a fence, said by some of the witnesses to be 52 inches high and by appellant's road-master and the section foreman, who built it, to be 5 feet or pretty close to 5 feet high. It was composed of cedar posts 8½ feet long set in the ground, 16½ feet apart, 3½ feet deep upon which were strung 5 strands of wire with barbs 5 inches apart. It was developed by appellee's attorney on cross-examination that there was nothing about the construction of this fence to distinguish it from the fences that are on the right of way of railroads generally, or from other fences of appellant. Upon the former trial the only description of the fence was that after the cattle were killed it had a top wire freshly broken.

The evidence showed that a day or two prior to June 13, 1916, appellee purchased the cattle in question and turned them into his pasture at the westerly end where the ground was high. On the night of

June 13, they entered the water and swam across to the railroad right of way, broke the top strand of the barb wire, and went upon the railroad track and were killed by an engine of appellant. At this time the water came up within 5 or 6 inches of the top wire of the fence.

Upon the trial appellee introduced in evidence a chart, made by the U. S. Weather Bureau at Dubuque, Iowa, showing the height of the Mississippi river each day during the year 1916, from which chart it appeared that the average daily height was 8.2 feet or 6.5 feet lower than it was on the day in question. The water when at its average daily height during that year was at least 2.5 feet lower than the level of the land, upon which the fence was built, and at the lowest watermark during that year the water was 7.4 feet below the land level.

The pasture consisted of 675 acres. It was 3 or 4 miles long and the place where the cattle were put in was about a mile from where they went upon the right of way.

While there is some testimony to the effect that on other occasions the water had been higher than in 1916, the only specific years which could be recalled were 1880, 1881 and 1888. Witnesses who had for years observed the stage of the water daily testified that the water seldom reached a 14-foot stage. The evidence on this subject is such that we conclude that when it erected the fence in question the railroad company could not have reasonably foreseen either that the water would rise to a 14.7 stage or that, if it did, cattle would swim a distance of several hundred feet and come against the barbs and wire with sufficient force to break it.

The section of the statute upon which this action is brought provides: "That every railroad corporation, shall   *   *   *   erect and thereafter maintain fences on both sides of its road   *   *   *   suitable

and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad." (J. & A. ¶ 8811.)

The statutory requirement that fences shall be erected on both sides of the road would not have been complied with had appellant built its fence 8 or 10 feet nearer the track, and had it done so appellee could have compelled it by mandamus to build another along the line of its right of way. *Ohio & M. Ry. Co. v. People*, 121 Ill. 483.

This statute does not specify the kind of fence or the materials of which it shall be composed as does section 2 of chapter 54 of the Revised Statutes of Illinois (J. & A. ¶ 5702). It requires the erection of fences "suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad." Numerous authorities have been cited by both appellant and appellee, but a careful perusal of all of these and other authorities demonstrates that in none of these cases has the court fully defined what constitutes the statutory fence, but in each case the question as to whether the fence in question in that particular case was or was not a suitable or sufficient fence was decided as a question of ultimate fact depending upon the evidentiary facts of that particular case, and the authorities are only helpful as announcing some general principles which may be of assistance in arriving at a decision upon such facts.

At common law railroads were not required to fence their right of way. *Neversorry v. Duluth, S. S. & A. Ry. Co.*, 115 Mich. 146; *McCook v. Bryan*, 4 Okla. 488; *Sinard v. Southern Ry. Co.*, 101 Tenn. 473; *Day v. New Orleans Pac. Ry. Co.*, 35 La. Ann. 694.

In *Smith v. Baltimore & O. Chicago Terminal R. Co.*, 184 Ill. App. 80, it was held that the statute was not to be literally construed and that the fence need not be such a fence as to absolutely prevent

stock from getting upon the railroad tracks and that the term "suitable and sufficient" was to be given much the same meaning as "fit" or "satisfactory." In *Illinois Cent. R. Co. v. Dickerson*, 27 Ill. 55, it was held that the railroad company was not an insurer of the sufficiency of the fence and that it was not its duty to keep a patrol to see that the fence was not broken down by breachy cattle.

In *Chicago & A. R. Co. v. Utley*, 38 Ill. 410, it was held that a good and sufficient fence must be not merely a slight barrier which will turn ordinary stock, but one which will turn stock even though, to some extent, unruly, but if the fence was good and sufficient for turning stock under all ordinary circumstances and an animal got upon the track notwithstanding, the company would only be liable for wilful negligence. In *Stewart v. Bloomington, C. & D. R. Co.*, 180 Ill. App. 608, it was said: "If the cattle guard was suitable and sufficient to prevent ordinary stock or stock to some extent unruly, from getting on the railroad, then it complied with the statute." In *Scott v. Wirshing*, 64 Ill. 102, it was held that a fence was good and sufficient if it would prevent the breaking in of stock not breachy.

In *Shellarbarger v. Chicago, R. I. & P. R. Co.*, 66 Iowa 18, 23 N. W. 158, the Iowa Supreme Court said: "The term 'fence' has a signification and meaning well understood in the law, as well as in common parlance. It does not mean an impassable barrier, or such a structure as is absolutely insurmountable by any live stock, however breachy or vicious the animals may be. * * * We think it has been quite uniformly understood by the courts and legal profession in this State, since the enactment of the railroad fence law in 1862, that a fence that is reasonably sufficient fulfils all the requirements of the law. The decisions of this court in several cases seem to recognize such to be the rule." In *Campbell v. Iowa*

*Cent. Ry. Co.*, 124 Iowa 248, 99 N. W. 1061, it was held that the duty of a railroad company to maintain a "sufficient" cattle guard does not mean one that cannot under any circumstances be crossed by an animal, but one reasonably adapted for the purpose.

In *Miller v. Chicago, M. & St. P. Ry. Co.*, 180 Mo. App. 209 [6 N. C. C. A. 496], 167 S. W. 1160, in construing a statute which required railroad companies "to construct and maintain cattle guards sufficient to prevent horses * * * from getting on the railroad," the court said: "The statute did not impose the duty upon the defendant of maintaining a cattle guard that would be an insurmountable barrier to horses under any and all circumstances. It is not intended that a railroad company shall insure its cattle guards to be stock proof. * * * The extent of defendant's duty was to build and maintain a guard that ordinarily would be sufficient to prevent horses from attempting to pass over it into the right of way."

In *Choctaw & M. R. Co. v. Goset*, 70 Ark. 427, 68 S. W. 879, the Arkansas Supreme Court in construing a statute requiring railroad companies to construct "suitable and safe" stock guards said: "It does not, of course, necessarily follow because a hog or a cow passed a stock guard that it is unsafe and unsuitable within the meaning of the statute. * * * The law does not impose an impossible or impracticable duty upon the company." This language is quoted with approval in *St. Louis, M. & S. E. Ry. Co. v. Busick*, 74 Ark. 589, 86 S. W. 674, where the court held an instruction erroneous which told the jury that if the cattle guard was defectively constructed "so as not to effectively prevent stock from passing over the same," etc., the company would be liable.

In *Midland Val. R. Co. v. Bryant*, 37 Okla. 206, 131 Pac. 678, the Supreme Court of Oklahoma said: "The statute requiring railroad companies to fence

their roads does not exact that a railroad cattle guard, to be sufficient, must be so constructed and maintained as to interpose an absolutely unsurmountable and impassable barrier against the encroachment of stock, without exception and under all conditions." In *Toledo & W. Ry. Co. v. Thomas,* 18 Ind. 215, it was held that where a railroad company kept such a fence as "good husbandmen generally kept," it had performed its statutory duty. The Supreme Court of Texas in *Texas Cent. Ry. Co. v. Pruitt,* 101 Tex. 548, 109 S. W. 925, held that where a railroad had fenced its right of way its duty was to maintain the fence in such condition as under ordinary circumstances to effectually turn live stock of ordinary disposition and docility.

In *Patten v. Chicago, M. & St. P. Ry. Co.,* 75 Iowa 459, 39 N. W. 708, in a suit for damages for an animal which went upon the track of a railroad by crossing the fence upon snow which was nearly as high as the fence, the Supreme Court of Iowa held that the law does not require railroad companies to keep their fences along their right of way clear of snowdrifts, nor to build, keep and maintain such fences at any specified height above the top of snowdrifts and also held that it was not negligence to allow snowdrifts to remain drifted over railroad fences so that they do not serve the purpose of restraining stock from crossing over them into the right of way. In *Blains v. Minneapolis & St. L. Ry. Co.,* 34 Minn. 57, 24 N. W. 558, the Supreme Court of Minnesota laid down a similar rule.

In 33 Cyc. 1199, the rule is laid down that a railroad fence need not be such as to constitute an impassable barrier to all stock without regard to how breachy or vicious they may be, but need only be such as is reasonably sufficient to prevent animals from going upon the track.

In California the statute required railroad corpora-

tions to build "good and sufficient" fences, and in *Jesus Maria Rancho v. Southern Pac. Co.*, 30 Cal. App. 375, 172 Pac. 183, the Supreme Court held that, where the railroad traversed land where high winds sometimes drifted sand over the right of way fences, the railroad company was not under the duty, in order to properly maintain fences, to build them abnormally high, there being long periods when the sand did not move.

It is a well-established rule of law that in transacting its business a railroad company is not required to guard against things unusual or extraordinary and which are not to be ordinarily foreseen by the exercise of ordinary care, and we know of no reason why this rule should not apply to it when fencing its right of way.

From the authorities we deduce the rule that a railroad company has complied with the statute where it has built and maintained a fence which, under ordinary circumstances, will prevent the passage of animals not more than ordinarily unruly or breachy, and that when it has built and maintained such a fence it will not be liable for injuries to stock breaking through such fence unless guilty of wilful negligence.

Applying these rules to the present case we are of the opinion that when the evidence is all considered and not merely that portion most favorable to appellee, it shows that the fence in question complied with the requirements of the statute and that there is no evidence tending to show wilful negligence on the part of appellant. While courts of appeal will not ordinarily disturb the verdicts of juries upon questions of fact, yet they will do so where, as in this case, the verdict is so clearly and palpably against the weight of the evidence as to show that it must be the result of misconception. *Carney v. Sheedy*, 295 Ill. 78.

The cause will be reversed and a judgment of *nil capiat* entered here.

*Reversed with findings of fact.*

Findings of fact. We find that appellant constructed and maintained, at the place where appellee's cattle entered upon appellant's right of way, a fence suitable and sufficient to prevent cattle, horses, sheep, hogs or other live stock from getting on appellant's railroad.