### Easton Farmers Grain Company, Appellant, v. Fernandes Grain Company, Appellee.

GAMBLING CONTRACTS—*intention of parties dealing in grain futures as jury question.* In an action under the statute to recover losses alleged to have been sustained in gambling transactions in grain futures, it is error to direct a verdict for the defendant on the ground that the dealings did not constitute gambling transactions within the meaning of the Criminal Code, ch. 38, sec. 130, Cahill's Ill. St. ch. 38, ¶ 308, because they were had under the rules of the Chicago Board of Trade and that under the terms of the contract either party had a right to require actual delivery of the grain, where there is evidence that no grain was actually delivered or received by either party, that defendant treated the account solely as an "option account" on its books and rendered itemized statements to plaintiff on that basis, that plaintiff's manager, who conducted all the dealings in its name, settled with defendant by sending blank checks to cover margins, the amounts of which were not previously determined, and where such manager testified that it was his intention to settle all transactions on market differences.

Appeal by plaintiff from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding. Heard in this court at the October term, 1922. Reversed and remanded. Opinion filed January 17, 1923. Rehearing denied April 3, 1923.

W. ST. J. WINES and STEVENS & HERNDON, for appellant.

HARLINGTON WOOD, SAMPSON & GIFFIN and HUGH J. GRAHAM, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

Appellant brought suit against appellee under the

statute to recover for losses alleged to have been sustained by reason of gambling transactions in buying and selling grain. Appellee pleaded the general issue. Upon the trial, at the conclusion of the appellant's evidence, the court directed a verdict for appellee, overruled appellant's motion for a new trial and entered a judgment accordingly, from which judgment this appeal was taken.

It is contended by appellant that the court erred in directing a verdict for appellee. Upon the trial it appeared that appellant is a farmers' co-operative association with a capital stock of $14,000, owning two grain elevators, one at Easton and the other at Biggs, both in Mason county, Illinois, with a combined capacity of about 75,000 bushels, and that for the past twelve years the active operations of the appellant have been in the hands of its general manager, Mr. Howard Keefer. Appellee is also engaged in the business of buying and selling grain, having offices in Springfield and at Lincoln, Illinois, each firm keeping a separate account of grain sold on futures and grain actually delivered. Mr. Keefer began dealing in futures with the Fernandes Grain Company on May 10, 1920, and continued so to deal until December 4, 1920. The Fernandes Grain Company rendered statements at the close of each day's transactions, showing the same, from which certain tables have been prepared and were introduced in evidence, which show the daily transactions in future corn during this period of time, ending with a summary by months, showing 650,000 bushels of corn futures bought, and the same amount sold. This amount of corn was bought for $970,043.75 and sold for $941,218.75, at a loss of $28,825. They also show that 250,000 bushels of future wheat were purchased during that period at a cost of $458,887.50 and sold for $453,825.00, at a loss of $5,062.50.

The Fernandes Grain Company mailed an itemized

statement to the Easton Company showing in detail the respective dates, amounts, kind of grain and debits and credits of all the trades in futures between the two companies, which the Fernandes Grain Company marked "Option Account." This account shows that on certain days there were both purchases and sales of grain for future delivery.

No grain was ever delivered or received on any of these transactions. Blank checks were sent by Mr. Keefer to the Fernandes Grain Company as margins, there being no particular basis upon which the margin was put up. Mr. Keefer, when asked as to his intention at the time of giving the various orders involved in this suit, replies: "The intention at the time of giving the order possibly was to settle on the market difference. * * * My intention was to buy it and close it out at market differences, as near as I can remember. * * * I cannot say for any particular item more than I can for the whole thing, but I rather think my intention was to settle at market differences. * * * It was my understanding that all orders were executed as according to the Board of Trade. It was my understanding that trades were carried on by securing sellers on the Chicago Board of Trade. I got quick service from Fernandes. I got it without expense for telephoning. It was because I saved money and delay that I gave orders to Fernandes."

Section 130, ch. 38, of the Criminal Code [Cahill's Ill. St. ch. 38, ¶ 308] provides that: "Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity * * * where it is at the time of making such contract intended by both parties thereto that the option, whenever exercised, * * * shall be settled, not by the receipt or delivery of such property, but by the payment only of differences in price thereof, * * * shall be fined * * * 'or confined in the county jail * * *; and all contracts made

in violation of this section shall be considered gambling contracts and shall be void.''

The only question in this case is whether or not there is any evidence in the case tending to show that at the time of the various transactions it was the intention of both parties thereto that the option  *  *  * or the contract  *  *  * shall be settled  *  *  * not by the receipt or delivery of such property, but by the payment only of differences in prices thereof.

It is the contention of appellee that as these purchases and sales were made under the rules of the Chicago Board of Trade and that under the terms of the contract either party had a right to require delivery, there was no gambling contract. It is not the language of the contract which governs but the intention with which it is made. If the terms of the contract governed then the section of the Criminal Code in question would be nugatory as almost every gambling transaction in grain by its terms is for the sale and delivery of grain. If at the time of the making of the contract it is the intention of the parties that delivery shall be settled by the payment only in difference in price, it matters not that the contract by its express terms requires delivery and it matters not in the case of a contract prohibited by this law what the form of the contract may be. If a contract be made contrary to law, it matters not whether it be made upon the Chicago Board of Trade or elsewhere.

In *Pardridge v. Cutler,* 168 Ill. 504, it was said: ''It is not claimed that all dealings on the Board of Trade are gambling transactions while, perhaps, no one will deny that a part of the business transacted there is of that character. Plaintiff might have made bona fide purchases and sales for actual receipt and delivery in every instance, but the forms adopted could be used with equal facility, by counter purchases and sales and settlement of differences, for illegal and illegitimate dealings as between him and defendant.

* * * No one can be found to deny that parties can gamble in differences under these rules as easily as to do a legitimate business, and it was wholly immaterial that the rules provided for legitimate methods.''

Common experience shows that intention is manifested not so much by what men say as by what they do.

In *Jamieson v. Wallace*, 167 Ill. 388, it was said: ''The intention of the parties in such cases may be determined from the nature of the transaction, and from the manner and method of carrying on the business. (*Irwin v. Williar*, 110 U. S. 507; *Gregory v. Wendell*, 39 Mich. 337; 8 Amer. & Eng. Encyc. of Law, 1010; *North v. Phillips*, 89 Pa. St. 250; *Ruchizky v. DeHaven*, 97 Pa. St. 202; *Beveridge v. Hewitt*, 8 Ill. App. 467; *Griswold v. Gregg, Son & Co.*, 24 Ill. App. 384; *Carroll v. Holmes*, 24 Ill. App. 453; *Kennedy v. Stout*, 26 Ill. App. 133; *Miles v. Andrews*, 40 Ill. App. 155; *Pearce v. Foote*, 113 Ill. 228; *Brand v. Henderson*, 107 Ill. 141; *Tenney v. Foote*, 95 Ill. 99; *Cothran v. Ellis*, 125 Ill. 496.) An examination of the authorities above referred to will show that the intention of the parties may be determined from a variety of circumstances. Among these circumstances, beside the mode of dealing between the parties, is the pecuniary ability of the party purchasing. If the purchases of a party, as ordered through a broker, are larger in amount than he is able to pay for, it is a strong circumstance indicating that there was no intention of receiving the property, but rather an intention to settle the difference between the market price and the contract price. Such intention may be also inferred where the party making the purchase never calls upon the party ordering the purchase for the purchase money, but only for margins. It makes no difference whether the real intention is formally expressed in words or not, if the facts and circumstances in proof show that it was the real understanding that there

should be no actual purchase and no delivery or acceptance of the property involved in the contract, but merely an adjustment of damages upon differences."

In *Pratt & Co. v. Ashmore,* 224 Ill. 587, the court said upon this point: "But the intention in this regard may be established not merely by their assertions, but by all the attending circumstances of the transactions. The question of intention is a question for the jury or for the court, to be determined by a consideration of all the evidence." In *Bartlett v. Slusher,* 215 Ill. 348, it was said: "These various options were settled, as shown by the accounts rendered by the appellant firm, without the transfer of any grain. Profits and losses were adjusted by way of differences in the market price and the contract or option price of the grain. It cannot be declared, as matter of law, that there was no evidence tending to support the position of appellee that it was the understanding and intention of the parties that the contracts were to be settled without the actual receipt or delivery of the grain."

Upon a motion to direct a verdict upon the trial of an issue, the party against whom the motion is directed is entitled to the benefit of all the evidence in his favor in its aspect most favorable to him, and of all presumptions and inferences that may reasonably be drawn from such evidence. The evidence is not weighed and all contradictory evidence or explanatory circumstances must be rejected. *Yess v. Yess,* 255 Ill. 414; *McCune v. Reynolds,* 288 Ill. 188; *Pluym v. Illinois Cent. R. Co.,* 220 Ill. App. 554.

Applying the rule of law above stated to the facts of the present case, it is evident that there was evidence fairly tending to show that at the time of making the contracts in question it was the understanding and intention of the parties that the contracts were to be settled without the actual receipt or delivery of the grain and that therefore the cause should have

been submitted to the jury for its consideration. The judgment is reversed and the cause remanded.

*Reversed and remanded.*