## MISSOURI, K. & T. RY. CO. OF TEXAS v. ORR. (No. 11130.)

(Court of Civil Appeals of Texas, Fort Worth. April 4, 1925.)

1. **Evidence ⬅⚫➡54—Presumption of fact cannot rest upon a fact presumed.**

Presumption of fact cannot rest upon a fact presumed.

2. **Railroads ⬅⚫➡411(10½)—Responsibility for injury to stock under fence law, stated.**

Under Rev. Civ. St. art. 6603, railway company is not liable for injury to stock getting on right of way because of defective fence, unless injury is caused by contact with moving locomotive or car, or unless negligence of company proximately contributing to injury is shown, further than allowing fence to become defective.

3. **Railroads ⬅⚫➡441(6)—Owner of live stock injured has burden of proving negligence beyond matter of defective fence.**

Under Rev. Civ. St. art. 6603, if railway company fences right of way, and allows fence to become defective, it is liable for injury to live stock going thereon through defective fence, if injury is caused by contact of such live stock with moving engine or car, but, if no such showing is made, plaintiff has burden of proving company's negligence beyond matter of defective fence.

4. **Railroads ⬅⚫➡446(6)—Evidence as to cause of injury to horse held to require peremptory instruction for defendant.**

In action for death of horse from injury by railroad, in which there was no direct evidence as to manner of injury, and in which to make defendant liable, it would first have to be presumed that horse crossed defective fence and got into defendant's right of way, and that she slipped down embankment from becoming frightened at passing train or other cause, and that she was injured thereby, trial court should have peremptorily instructed verdict for defendant.

5. *Appeal and error ⬅⚫➡1175(5)—If evidence is fully developed, appellate court is required to render such judgment as trial court should have rendered.*

On appeal from judgment against railroad company for death of horse, where evidence was fully developed and showed no liability on part of defendant, appellate court is required to render such judgment as trial court should have rendered, and enter judgment for defendant.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by L. R. Orr against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Thompson, Barwise & Wharton, and B. V. Thompson, all of Fort Worth, for appellant.

Samuels & Brown and David W. Stephens, all of Fort Worth, for appellee.

BUCK, J. Appellee sued appellant in the justice court for the recovery of $175 as by reason of the death of a mare owned by him, valued at $125, and the subsequent death of her colt, valued at $50. He recovered $175, and on appeal to the county court, in a trial before a jury, he recovered damages for $125 for the death of the mare, but recovery was denied him for the death of the colt. The defendant has appealed.

The theory upon which the recovery was had was that the right of way fence was down between plaintiff's pasture and the railroad right of way, and that the mare crossed over the defective fence onto the right of way, and got scared, probably at the approach of a train, attempted to run down the embankment, and injured herself

so that she died. It is not shown, nor is it claimed by appellee, that the mare was hit by defendant's train or a locomotive. Plaintiff testified that he found the mare standing near the fence, but inside of his inclosure, one morning as he was going to work, on May 5, 1924; that her left hind foot was not touching the ground. Plaintiff testified:

"She was not standing up the day she died. She was bruised all under the back of her legs and also the front part of her legs, and she got so I couldn't get her up. I continued to administer to her, but little worms got to working in these sores and I used gasoline. I noticed that the fence was down along the right of way. I noticed a place there where she might have fallen, a smooth place in the embankment, 10 or 12 feet. I am just guessing about that because I didn't measure it. About half way I should judge from the track to the bottom was a smooth place just like an imprint where a side or shoulder would fall, indicating where this mare had fallen, when she was knocked from the track."

Robert Orr, son of plaintiff, testified that the mare's leg was broken. Charles Smallweed testified, for defendant, that he was working under the section foreman, Mr. H. E. Miller. He said:

"I went out to work with Mr. Miller, and Mr. Miller stopped out there and said there was a mare hurt here yesterday, and we looked at the tracks to see if it was done on the railroad or where. We looked along the embankment there by the bridge, but didn't see anything at all. We saw this mare on the bank near the little bridge, about 30 or 35 feet, I would call it, on bank standing there with her ankle broke, left ankle I think it was, and a little baby colt beside her. This was on the bank of the creek in Mr. Orr's pasture. We looked along that bank and we saw where the horse slipped there a day or so before, or whenever it was. It was fresh dirt down that bank. It was kind of rocky in the bed of that creek."

H. E. Miller testified that he was the foreman in charge of that section, and that, when he learned from Mr. Orr that his mare had been hurt, he walked 500 feet, each way, along the track, but found no signs of blood or hair, indicating that an animal had been hit by a moving train; that he looked along the bank of the creek, where the mare was standing at the time (she having been driven some 100 feet from where she was standing when Orr first found her, to a pool of water in the creek bed), and that, about 50 feet from where the animal was standing, he saw where a horse had slipped a distance of about 15 feet; that this place was not on the defendant's right of way, but about 150 feet therefrom over in plaintiff's pasture. He said he "compared the hoof prints with those of the mare," evidently meaning that they were the same size and shape.

[1, 2] We are of opinion that, in order to sustain the judgment below, we must first presume that the mare crossed the defective fence and got into the defendant's right of way; second that she slipped down the embankment, by reason of becoming frightened at a passing train or from some other cause; and third, that she was injured thereby. No one saw the mare on the right of way, and no one was able to say by what means she was injured. A presumption of fact cannot rest upon a fact presumed. Fort Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130; G., C. & S. F. Ry. Co. v. Davis (Tex. Civ. App.) 161 S. W. 932, writ refused; 16 Cyc. 1057; Mo. Pac. Ry. Co. v. Porter, 73 Tex. 307, 11 S. W. 324. Moreover, we are of the opinion that a railway company is not liable for injury to stock getting on its right of way by reason of a defective fence, unless the injury is caused by coming in contact with a moving locomotive or car, or unless negligence of the railway proximately contributing to the injury is shown, further than allowing its fence to become defective. Article 6603, Rev. Civ. Statutes, reads as follows:

"Each and every railroad company shall be liable to the owner for the value of all stock killed or injured by the locomotives and cars of such railroad company in running over their respective railways, which may be recovered by suit before any court having competent jurisdiction of the amount. Such liability shall also exist in counties and subdivisions of counties which adopt the stock law prohibiting the running at large of horses, mules, jacks, jennets and cattle: Provided, however, that in all cases, if the railroad company fence its road, it shall only be liable for injury resulting from a want of ordinary care."

I. & G. N. Ry. Co. v. Hughes, 68 Tex. 291, 4 S. W. 492, says:

"These charges involve the proposition that a railway company, under the laws of this state, is liable for an injury to an animal which may be caused otherwise than by actual contact with the engine or cars, and without fault of the company or its employees, provided its road is not fenced. * * *

"This statutory liability is based on an injury caused by locomotives and cars. It certainly was never intended that such a liability should exist even in case of contact between a locomotive or car and an animal if the contact was caused by the movement of the animal while the engine or car was stationary; and to make clear the manner in which the injury must be caused by the locomotive or car, the statute declares that it must be incurred in running over their respective railways. This involves the idea of contact between a running engine or car and the animal, and not an injury resulting in some indirect manner from the operation of a railway. * * *

"We do not wish to be understood to hold that in no case could a recovery be had for an injury to animals where there is no collision with a moving engine or car; for cases may occur in which the injury, without collision,

may be the proximate result of the negligence of a railway company or its employees, but in such a case the recovery would not be based on the statute, and proof of negligence would have to come from the party alleging it. In the case before us, there is no proof of such negligence."

In S. A. & A. P. Ry. Co. v. Tamborello (Tex. Civ. App.) 67 S. W. 926, the court says:

"It is only when stock is killed or injured by the locomotives and cars of railroads in running over their respective railways that a railway company which failed to fence its road can be held absolutely liable, under article 4528, Rev. St., to the owner for the value of the animal injured. Railway Co. v. Harris, 3 Willson, Civ. Cas. Ct. App. § 224; Railway Co. v. Leal, 4 Willson, Civ. Cas. Ct. App. § 149; Foster v. Railroad Co., 90 Mo. 116, 2 S. W. 138. The first requisite to establish negligence is to show the existence of a duty to the party aggrieved, and then a violation or neglect to perform that duty. Cooley, Torts, 859, 860. No duty requires a railroad company to abstain from using its property for any lawful purpose, or to use any care to keep the premises in good condition, on account of the possibility that cattle may stray upon the unfenced track and suffer injury. Shear, & R. Neg. § 419; Railway Co. v. Kriksey (see this case for citation of authorities and discussion of the subject) 48 Ark. 366, 3 S. W. 190; Railroad Co. v. Carraher, 47 Ill. 333."

In Brown v. M., K. & T. Ry. Co. (Tex. Civ. App.) 69 S. W. 178, it is said:

"In order for appellee to be liable under the allegations, it must not only have been negligent in allowing the fence to become defective, but negligent in having a right of way into which Johnson grass had made its insidious entrance, and negligent in cutting such grass, and permitting it to come up again after it had been cut. Railway companies cannot be held responsible for the many and varied species of vegetation that come up on their land, and cannot be held liable for injury to cattle resulting from eating such natural vegetation. Fences are built about rights of way, not to protect cattle from eating the vegetation growing thereon, but to keep them from being killed by trains, and, under the circumstances of this case, there was no negligence in permitting the fence to fall into decay, and appellee is no more liable for the injury resulting from the cattle eating the grass than it would be if there had been no fence; and it could not, certainly, be contended that there would be liability for damages arising to stock from eating the natural growth on the unfenced right of way."

To the same effect are Padgitt v. M., K. & T. Ry. Co. (Tex. Civ. App.) 90 S. W. 67; B., S. L. & W. Ry. Co. v. Langford (Tex. Civ. App.) 104 S. W. 920; G., C. & S. F. Ry. Co. v. Anson, 101 Tex. 198, 105 S. W. 989; Stewart v. T. & P. Ry. Co. (Tex. Civ. App.) 165 S. W. 559; St. L. S. W. Ry. Co. v. Tabb (Tex. Civ. App.) 168 S. W. 866; St. L. S. W. Ry. Co. v. Claybon (Tex. Civ. App.) 199 S W. 488.

[3] If a railway company fences its right of way, and then allows the fence to become defective, it is absolutely liable for injury to live stock going thereon through the defective fence, if the injury is caused by such live stock coming in contact with a moving engine or car. M., K. & T. Ry. Co. v. Tolbert, 100 Tex. 483, 101 S. W. 206; Tex. Cent. Ry. Co. v. Pruitt, 101 Tex. 548, 109 S. W. 925; Robbins v. Bell (Tex. Civ. App.) 195 S. W. 865. But, if no such showing is made, then the plaintiff has the burden of proving the railway company's negligence beyond the matter of a defective fence. Schaff v. Page, (Tex. Civ. App.) 203 S. W. 807, application for writ of error dismissed by the Supreme Court for want of jurisdiction.

Appellee seems to rely especially on the cases of I. & G. N. Ry. Co. v. Dixon, 49 Tex. Civ. App. 506, 109 S. W. 978, and M., K. & T. Ry. Co. v. Lovell, 110 Tex. 546, 221 S. W. 929 (Tex. Civ. App.) 223 S. W. 1025. In the Dixon Case the evidence showed that the animals got on the railway's right of way through a defective fence or gate, and that they then got on the track, and were discovered by the engineer of an approaching train. The animals became frightened at the train, and ran down the track, and fell into a bridge. Whether evidence disclosed that the engineer was guilty in not stopping his train before the animals ran onto the bridge, or whether he blew his whistle and scared the horses, is not disclosed by the statement of the case, but, in order to make the Dixon Case harmonize with the other Texas cases upon this point, some act of negligence must have been alleged and proven beyond allowing the fence to become defective.

In the Lovell Case, the evidence showed that the horses got into the right of way through a gap negligently left open, and it was alleged and proven that the horses—

"became frightened at a passing train over defendant's railway, and the unusual, violent, and negligent blowing of the whistle and sounding of the bell caused three of the animals to run into and through and over a fence extending from defendant's right of way to a certain culvert or bridge therein and which were thereby cut, bruised, and injured in the sum of $20 each, and that one of said horses was thereby caused to enter upon the said culvert or bridge, and was thereby scratched, bruised, and injured, to its damage in the sum of $20, and that one brown mare was caused to go upon said culvert or bridge, and get caught therein between the openings between the cross-ties, and was so seriously injured that the defendant's employees killed her."

The evidence showed that the brown mare, by reason of being frightened at the negligent blowing of the whistle and the sound-

ing of the bell, and the blowing off of steam, evidently crossed the culvert or bridge without apparent injury, but later attempted to return to where she had left her companions and while crossing the bridge was injured. This court, by a majority opinion, denied plaintiff a recovery for the mare, but upon a motion for rehearing we certified the question of the liability of the railway for the death of the mare to the Supreme Court, and in an opinion by Chief Justice Phillips (110 Tex. 546, 221 S. W. 929) that court held the defendant liable. The reason the Supreme Court so held, and the reason for the dissent, was that, the defendant being negligent in scaring the horses in the first instance, and in driving the mare over the culvert or bridge, it was also liable for the death of the mare in attempting to come back over the bridge; such act being the direct result of the negligence of the railway company in scaring the mare in the first instance. This theory of the case is shown in the dissent, which reads as follows:

"I cannot agree with the views expressed in the majority opinion nor in the disposition of this case. If the railway company is liable for the injuries sustained by the horses which ran through the fences to escape from what, no doubt, seemed to them an approaching monster, emitting loud and frightening noises, and belching forth clouds of smoke and steam, then it seems to me that no less is it liable for the death of the mare in question, which, having escaped from the threatening and imminent danger as she saw it, followed the natural promptings of her equine nature to get back to her companions by the only means of egress that presented itself. To one who knows horses and understands their habits, it would seem that under the circumstances it must have been reasonably anticipated that in all probability she would have attempted to do the very thing she did do, not realizing the danger from the gaps in the walkway selected until after she started onto the trestle and it was too late to turn back. I believe the accident in question is a result which naturally flows in a continuous sequence from the negligence of the railway company in permitting its gate or gap into its right of way to be down or get out of repair, or in failing to have fences and cattle guards on either side of the intersecting public road, thereby inviting loose stock to enter upon such right of way."

[4, 5] For the reasons stated, we believe that no liability of defendant below was shown in the trial court, and that the court should have peremptorily instructed a verdict for the defendant. Therefore we are required to render such judgment as in our opinion the trial court should have rendered, inasmuch as the evidence seems to have been fully developed.

The judgment for appellee is reversed, and judgment is here rendered for appellant, with costs adjudged against appellee.