**TEXAS & P. RY. CO. v. COOK et al.**
(No. 3128.)

(Court of Civil Appeals of Texas. Texarkana.
Dec. 3, 1925. Rehearing Denied Dec. 17,
1925.)

**1. Railroads ⊙≈425—Failure to fence must be proximate cause of injury to animals.**

Dereliction of legal duty to fence must be proximate cause of injury to animals in order to become basis of a liability.

**2. Railroads ⊙≈413(4)—Owner of land required to keep gate of stock fence closed.**

Where a railroad right of way runs through land, it is the duty of the owner of the land and not of the railroad company to keep gate of the stock fence closed.

**3. Railroads ⊙≈425—Owner of mules killed, held not entitled to recover without proof defect in fence caused injury.**

Where a railroad company inclosed track with a good stock fence, except as to certain places, where there were openings sufficient to enable plaintiff's mules to pass through upon the right of way, where they were killed by a train, but plaintiff's evidence showed that the mules did not enter the right of way through such openings, plaintiff was not entitled to recover for lack of proof that 'such openings proximately caused the stock to enter upon the right of way.

Appeal from Harrison County Court; John W. Scott, Judge.

Action by W. S. Cook and others against the Texas & Pacific Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded for new trial.

Prendergast & Prendergast, of Marshall, and T. D. Gresham, and R. S. Shapard, both of Dallas, for appellant.

Huffman & Huffman, of Marshall, for appellees.

HODGES, J. The appellee sued and recovered a judgment against the appellant for the value of two mules killed on the railway right of way. The facts show that the railroad ran through the premises of the appellee, and the track was inclosed by a four-wire fence. Gates had been left at convenient points for the accommodation of the appellee in crossing. The fence was apparently in good condition, except at some places where it crossed ravines or ditches. In two of those places the lower wire was so far above the bottom of the ravine as to permit animals to pass through on to the right of way. The section foreman testified that he discovered the bodies of the two mules on the right of way shortly after they were struck by an east-bound train. He back tracked them, he said, about 300 yards west to the gate on the north side of the right of way. This gate was partially open, and the

tracks indicated that the mules had entered upon the right of way through that opening. A witness for the appellee testified that he saw the mules shortly after they were struck, and tracked them from a point about a half a mile east of where they were killed. He went to the gate on the north side referred to by the section foreman, but did not see any tracks which indicated that the mules had entered at that place. There were tracks showing that a wagon and team had crossed the right of way the day before, but none made by the appellee's mules. He knew the location of the gullies under the fence referred to by other testimony. There were four or five of them, but all of them were west of where the mules were killed. The tracks showed that the mules had gone straight down the track to the place where they were killed. There were no tracks on the right of way west of that point, and there was no gully or washout place under the fence east of where they were killed. He did not know where they entered the right of way, and could not track them any further west than the place where they were found. There is a clear conflict in the testimony of these two witnesses—the only witnesses who testified concerning any facts tending to show how the animals entered upon the right of way. The appellee Cook testified that at only two of the depressions referred to by his witness could mules enter under the fence. He had never discovered any mule tracks going under the fence at any of those places.

[1-3] The case was tried before the court without a jury, and his findings of fact and conclusions of law indicate that he based his judgment upon the proposition that, if the fence was defective, the railway company was absolutely liable, regardless of how or where the mules entered the enclosure. We do not agree to that proposition. We think that, where the evidence shows that the track is inclosed with a good fence, except as to one or two defective places, it must appear that the defective condition was the proximate cause of the stock entering upon the right of way. S. A. & A. P. Ry. Co. v. Robinson, 17 Tex. Civ. App. 400, 43 S. W. 76; Ry. Co. v. Worsham, 47 Tex. Civ. App. 350, 105 S. W. 853.

If in this instance the proof had shown that the animals had been confined in a pasture on the south side of the railway track, where the fence was in good condition, and that the defects were on the north side of the track, and there was no explanation of how the mules entered upon right of way, could it be said that upon such proof the railway company should be held to absolute liability because of the defects in the fence which did not contribute to the injury? We think not. The requirement that, in order to escape absolute liability for stock killed

⊙≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by trains, a railway company must fence its track is no more imperative, or mandatory, than is the requirement that the whistle shall be blown and the bell rung when a train is approaching a crossing. Yet it has been uniformly held that the failure to blow the whistle and ring the bell cannot be made the basis of liability for injuries at crossings, where it appears that such failure was not the proximate cause of the injury. There is no rule of law better settled than that any dereliction of legal duty must be the proximate cause of an injury in order to become the basis of a liability.

The statute makes a railroad company absolutely liable for stock killed or injured by its trains, unless the track is inclosed by a fence. It does not undertake to prescribe the kind or character of fence that must be made in order to secure that immunity. But the courts have construed it to mean a fence sufficient to turn stock of ordinary habits and docility. In a suit for killing grown mules and horses absolute liability could not be claimed upon proof that the fence was not sufficient to turn hogs or small cattle; but such proof would be sufficient to establish absolute liability in a suit for the killing of small stock. The reason for the distinction lies in the fact that the defective condition as to the small animals could not be the proximate cause of the injuries to the large animals.

It may be that, where animals are found dead or injured upon an inclosed right of way, and the proof shows that there are defects in the fence through which the animals might have entered upon the track, it would be presumed that they entered through the defective places, in the absence of any evidence to the contrary; but that is not the state of the evidence in this case. According to the testimony of the section foreman, the mules entered upon the right of way at a gate 300 yards west of where they were killed. It was the duty of the appellee, not the railway company, to keep that gate closed; but, according to the testimony of appellee's witness, the mules entered upon the right of way at a point at least a half mile east of where they were killed, and they never went west of that point. He further testified that all of the openings referred to were west of where the mules were killed. If his testimony be true, the mules did not enter upon the right of way through the openings under the fence. We think the court decided the case upon an erroneous legal conclusion.

In support of the judgment appellee refers to the cases of Ry. Co. v. Swan, 97 Tex. 338, 78 S. W. 920, and Ry. Co. v. Pruitt, 101 Tex. 548, 109 S. W. 925. In neither of those cases were the facts legally similar to those here involved. In the Swan Case the decision was based upon the assumption that the right of way of the railway company was not completely inclosed with a fence. In the Pruitt Case the only question involved was the duty of the railway company to keep its fence in repair.

Since the case was decided upon what we conclude was an erroneous construction of the law, it will be reversed, and the cause remanded for a new trial.